Edward J. BRADLEY, Glen Browell, James Patrick Blose, James McGreal, Edward Sheehan, Matthew Thistlewood, Joseph Trucks

v.

LOCAL 119, INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS (AFL–CIO) (an unincorporated association).

Civ. A. No. 36902.

United States District Court
E. D. Pennsylvania.

Dec. 29, 1964.

725

Henry Thomas Dolan, Philadelphia, Pa., for plaintiffs.

Bernard L. Barkan, Philadelphia, Pa., for defendant.

LUONGO, District Judge.

This is an action for injunction under the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C.A. § 401 et seq.) known as the Landrum-Griffin Act. After hearing and argument, the court makes the following

## FINDINGS OF FACT

1. Defendant, Local 119 (hereinafter Local) of the International Union of Electrical, Radio and Machine Workers (AFL-CIO) (hereinafter International) is a labor organization.

2. Defendant represents a bargaining unit of approximately 3900 employees of General Electric Company (hereinafter GE or Company) of whom 3300 to 3400 are members of defendant.

3. Plaintiffs, Edward J. Bradley, Glen Browell, James Patrick Blose, James McGreal, Edward Sheehan, Matthew

Thistlewood and Joseph Trucks, are employees of GE and, until sometime in September 1964, were members in good standing of defendant.

4. Prior to September 1964, each of plaintiffs had authorized GE to check off the amount of his monthly union dues and to pay same to defendant.

5. During September 1964, each of the plaintiffs revoked the aforementioned checkoff authorizations and thereafter tendered payment of dues at defendant's office in the monthly amount prescribed in the constitution of Local. The "over the counter" tender of dues thus made was rejected.

6. Since the date that the plaintiffs have executed the revocations of checkoff authorization, the defendant has denied to them admittance to membership meetings and has declared them ineligible to participate in the business of the union meetings.

7. The sole basis upon which defendant has denied to plaintiffs admittance to membership meetings and declared them ineligible to participate in the business of said meetings is that the plaintiffs have resigned and are entitled to none of the rights and privileges of membership.

8. (a) Until sometime in 1958, the Local constitution provided, in part, that dues "shall be Three Dollars and Fifty Cents ($3.50) per month, payable on the second pay day of each month * * *."

(b) During 1958, the Local constitution was amended to provide:

"The dues of this Local shall be Four Dollars and Twenty-Five Cents ($4.25) per month, payable in accordance with the terms of the G.E.-I.U.E. National Agreement * * *."

(c) The GE-IUE National Agreement (hereinafter National Agreement) provides:

"ARTICLE II

"Union Security

"1. The Company, for each of its employees included within the bargaining units recognized by the Company pursuant to Article I hereof, who individually, in writing, duly authorizes his Company Paymaster to do so, will deduct from the earnings payable to such employee on the second pay day of each month, the monthly dues * * * for such employee's membership in the Local and shall remit promptly to the Local all such deductions. Local unions and local management are authorized to negotiate variations from this checkoff procedure with respect to the frequency of dues deductions (including weekly dues deductions), and to modify check-off authorization forms in accordance with any such local agreements.

"2. Subject to applicable law, any such authorization shall be revocable by the individual employee by individual notice in writing mailed by registered or certified letter to the Company and the Local postmarked not earlier than September 21 and not later than September 30 of any year during the term of this Agreement, or of any year during the term of each succeeding applicable collective bargaining agreement between the parties hereto, or 10 days prior to the termination date of each such succeeding Agreement."

(d) The president of defendant Local has interpreted Local constitution, read in conjunction with National Agreement, as requiring dues checkoff authorization as a condition of membership and has regarded plaintiffs' act of revoking dues checkoff authorization as resignation from membership.

9. Plaintiffs executed the revocations of authorization for the purpose of exerting additional pressure (by the threat of withholding monthly dues) upon Local and its officers to take affirmative and effective action on behalf of plaintiffs and other members of the bargaining unit in grievances against Company.

10. By the revocation of dues checkoff authorizations, plaintiffs did not in-

tend to, and did not in fact, deliberately terminate their membership in defendant Local. Following the execution of the revocations, plaintiffs tendered payment of the dues and attempted to attend membership meetings intending thereby to retain and exercise rights of membership in defendant Local.

11. Plaintiffs did not knowingly and voluntarily resign from membership in defendant Local, nor did they have reason to believe that revocation of checkoff authorization constituted resignation.

12. No provision of the International constitution or of the Local constitution denominates the act of revocation of dues checkoff authorization as resignation from union membership.

13. The provisions of Local constitution, read in conjunction with National Agreement, afford no reasonable basis for the interpretation that revocation of dues checkoff authorization constitutes resignation.

14. Plaintiffs have not resigned from, and remain members of defendant Local.

15. Hearing procedures are provided in the International constitution (Article XXV, § B) and Local constitution (Article X) only in cases where members are charged with committing an offense against the Constitution and Bylaws or against the general good and welfare of the union. Such charges are required to be presented in writing, and the accused is entitled to notice, hearing, and right of appeal.

16. Defendant has ruled that plaintiffs are not entitled to the benefits or the protections of the hearing procedures referred to in Finding No. 15 on the ground that plaintiffs have resigned from membership.

17. No hearing procedures are available within the union to resolve a controversy as to whether plaintiffs have resigned from membership.

18. Defendant has not asserted that the action taken against these plaintiffs is suspension, expulsion or other disciplinary action for non-payment of dues

contemplated within § 101(a) (5) of the LMRDA.

19. From 1958 through 1963, 181 members of Local sent letters to Company revoking authorizations to checkoff union dues. Of that number, 137 included, in the letters of revocation, specific language of resignation or withdrawal from membership in Local. The remaining 44 simply revoked the checkoff authorization and made no mention of resignation or withdrawal from membership.

20. Of the total of 181 hereinabove referred to, 18 have since re-executed checkoff authorizations. It has not been established whether some, all, or none of the 18 who re-executed authorizations had used language of resignation or withdrawal from membership in the letters of revocation.

21. Plaintiffs Bradley and Thistlewood attended a meeting of factory stewards on October 2, 1961, at which there was read to the stewards by the president of Local the names of 45 persons who had "resigned from the union." Plaintiff Bradley attended a stewards' meeting on October 7, 1963, at which the president of Local advised "We've had 12 drop outs," identifying them by name. The names were read at the meetings of stewards to inform them of the identity of those whom the stewards should attempt to persuade to re-execute authorizations.

22. It was not a matter of general knowledge among the membership that revocation of dues checkoff authorization had been or would be construed by defendant as resignation.

23. Defendant has denied to plaintiffs the right to attend membership meetings and to participate in union affairs, rights of membership guaranteed by § 101(a) (1) of the LMRDA, 29 U.S. C.A. § 411(a) (1).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and of the subject matter of this suit brought under Section 102 of

the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 412.

2. Plaintiffs are members of defendant, Local 119 International Union of Electrical, Radio and Machine Workers (AFL-CIO).

3. Defendant Local has withheld and, unless enjoined, will continue to withhold from plaintiffs, rights of membership guaranteed by Section 101(a) (1) of the LMRDA, 29 U.S.C.A. § 411(a) (1).

4. Plaintiffs will suffer irreparable harm unless injunctive relief is granted.

5. Plaintiffs are entitled to injunctive relief.

## DISCUSSION

Plaintiffs filed a complaint seeking a preliminary injunction against defendant Local to enjoin it from refusing to accept plaintiffs' tender of dues and from interfering with plaintiffs' rights as members. By stipulation, the matter is being disposed of as on final hearing for a permanent injunction.

The basic controversy in this case is whether these plaintiffs are still members of Local. Until September 1964, they were admittedly members in good standing. Until that time their union dues had been deducted by GE by checkoff in accordance with authorizations given by them to GE as provided in the GE-IUE National Agreement.

In September 1964, during the period when they were permitted to do so by the National Agreement, plaintiffs revoked the authorizations to GE to checkoff the dues. Defendant contends that the revocation of the dues checkoff authorizations was a resignation from the union and, accordingly, defendant refused to permit plaintiffs to attend membership meetings and to participate in the deliberations and business of the local union. Plaintiffs attempted to pay in person at the local union office monthly dues in the amounts assessed in the Local constitution, but the "over the counter" payment thus tendered by plaintiffs was refused.

Defendant's first question as to the jurisdiction of this court to entertain the present suit is that it charges an unfair labor practice and therefore belongs before the NLRB. That contention misconceives the purpose of the Landrum-Griffin Act, which is to protect the individual rights of union members vis-a-vis the union. If such rights are claimed to be denied or infringed, Congress has specifically designated the United States District Court as the forum for enforcement. Section 102, 29 U.S.C.A. § 412. Rekant v. Shochtay-Gasos Union, 320 F.2d 271 (3d Cir. 1963); Thomas v. Penn Supply & Metal Corp., 35 F.R.D. 17 (E.D.Pa.1964); See Calhoon v. Harvey, 85 S.Ct. 292 (1964). Jurisdiction to determine whether rights guaranteed by the Act to "[e]very member of a labor organization" have been withheld or infringed necessarily includes the power to ascertain whether those seeking relief have the requisite status, i. e. whether they are "members." Status is the only question involved here since it is conceded that if plaintiffs are "members," the guaranteed rights have been withheld.

The other jurisdictional point raised by defendant is that plaintiffs have failed to exhaust available union remedies as required by § 101(a) (4) of the Act before instituting this suit. The simple answer to that is that there are no available union remedies for this type of controversy, but what is even more to the point, if there were such remedies, defendant frankly concedes that it would not make them available to plaintiffs since internal union remedies are limited to "members" and defendant does not regard plaintiffs as members.

The only question on the merits is whether, by the act of revoking checkoff authorizations, plaintiffs "resigned" from the union. Unless there is some special meaning to be accorded to it, the word "resign" is to be given its normal and customary meaning, "To give up deliberately: renounce by a considered or

formal act * * *." Webster's New Inter'l Dictionary (3d ed. 1961).

Admittedly, nothing in the constitution of Local, or in the constitution of International, or in the GE-IUE National Agreement expressly spells out revocation as resignation. Defendant seeks to arrive at that result by "interpretation." The process by which it does so is tortuous. It contends that the interpretation given to Local constitution by the president of Local is entitled to great weight; Local constitution provides that dues shall be payable in accordance with the terms of the GE-IUE National Agreement; the Agreement only provides for payment of dues through checkoff; the president has interpreted those provisions to make checkoff the mandatory and exclusive method of paying dues, and anyone who refuses to pay dues by that method refuses to pay at all, thereby resigning from the union.

No reasons appear why · Local's president's interpretation is entitled to any special weight,[1] but if it were, the interpretation here advanced is so strained and lacking in foundation that I would, nevertheless, reject it.[2] Further, if his interpretation were supportable it could have effect only if it could be shown that plaintiffs knew or should have known of it. If plaintiffs were aware of such interpretation, it could be persuasively argued that when they revoked the authorizations they thereby knowingly and deliberately gave up membership.

Defendant did attempt to prove such knowledge but the evidence fell far short. By way of special knowledge, defendant established that two of the plaintiffs had attended shop stewards' meetings where the names of persons revoking authorizations had been read. It was contended that the purpose in reading the names was to inform the stewards as to the identity of those who had resigned, but it was apparent to me that the purpose was to inform the stewards of the identity of those they were to try to persuade to re-execute checkoff authorizations. As for general knowledge, defendant showed that over a six year period, 181 members had revoked checkoff authorizations. Of that number 137 had specifically included expressions of intent to resign, while the remainder made no statements one way or the other about resigning. That evidence did not satisfy me that it was a matter of general knowledge that revocation of checkoff authorization constituted resignation. The fact that 137 expressed intent to resign proves only that that number clearly and deliberately terminated their membership, i. e. they resigned in express terms. As for the remainder, those who did not resign by express words, there is nothing to show that they made any effort to attend meetings or to pay dues in some other fashion, or in any other way evidenced an intention to remain members, so for all that appears they, likewise, intended to "give up deliberately" their membership. Under the proof, I am satisfied that plaintiffs did not, by word or deed, deliberately give up or renounce membership. To the contrary, their actions at all times evidenced an intention to remain members and to retain the rights of membership.

---

1. The International president is given power to interpret the International constitution.

"* * * Between Conventions, and subject to reversal by the Executive Board, the President shall decide all questions involving the interpretation of this Constitution." International Constitution Article VI, Section B.

No comparable provision to interpret the Local constitution appears, either in the International or the Local constitution, for the president of Local.

2. Defendant's interpretation is all the more untenable in light of the fact that Local constitution provides, in case of three months' delinquency in payment of dues, *suspension* of benefits and privileges. The consequence attached by this interpretation to alleged improper *method* of payment is far more severe (termination of membership) than the penalty expressly provided for *failure* of payment (suspension). See Article XI(2)(B), Local Constitution.

Defendant has urged the importance to it of dues checkoff. There are obvious benefits to a union in the system, but that is totally irrelevant to the resolution of this controversy. It may well be that in refusing to go along with the checkoff, plaintiffs were motivated by a desire to harass defendant rather than for any particular benefits to them. It may well be that what plaintiffs are doing is against the "good and welfare" of the union. If defendant is aggrieved, it must proceed against plaintiffs, as *members*, in the manner provided in the constitutions of Local and International. All that is here decided is that these plaintiffs have not resigned. They must be treated as members. An injunction will issue, therefore, which will require defendant to accept the tender of dues from plaintiffs and to accord to them the rights and privileges of membership.

A form of order may be submitted upon notice to opposing counsel.