Stevens, J.
Plaintiff, a radio commentator on public affairs, states that he was required by his employer, Mutual Broadcasting System, Inc. (Mutual) to join defendant American Federation of Television and Radio Artists (AFTRA), pay dues, and comply with AFTRA’s orders or directives as a condition of employment. Plaintiff asserts such requirement is purportedly authorized by section 8 (subd. [a], par. [3]) of the National Labor Relations Act (U. S. Code, tit. 29, § 158, subd. [a], par. [3]). He seeks a declaratory judgment that, such requirement, as a condition of speaking over radio, violates *269 Ms rights under the First Amendment of the Constitution of the United States.
AFTRA admits that it has a urnon shop contract with Mutual as exclusive bargaining agent for employees of Mutual in appropriate bargaimng umts and as exclusive bargaimng representative for those employees in various other categories (one of which includes plaintiff, viz. broadcasters); that it “is the designated, selected or certified bargaining representative pursuant to the provisions of Section 9(a) of NLRA, 29 U.S.C. § 158; admits that AFTRA is empowered to enter into agreements with employers requiring as a condition of employment membersMp therein on or after the tMrtieth day following the beginmng of such employment or the effective date of such agreement, wMchever is the later, pursuant to the provisions of Section 8(a) (3) of NLRA, 29 U.S.C. § 158 ”.
After joinder of issue plaintiff moved for summary judgment and such motion was demed. AFTRA’s cross motion for summary judgment was granted and the complaint dismissed. The Appellate Division modified to strike the dismissal and to substitute therefor a provision declaring that section 8 (subd. [a], par. [3]), insofar as it authorizes AFTRA to require plaintiff to pay dues as a condition to speaMng on radio, does not violate the First Amendment. As so modified the order was otherwise affirmed.
Under AFTRA’s Code of Fair Practice, and its agreements with Mutual, Mutual bound itself to “ employ and maintain in our employment only such persons covered by this agreement as are members of the American Federation of Television and Radio Artists in good standing ”. Such a provision is expressly permitted by the language of section 8 (subd. [a], par. [3]) of the National Labor Relations Act (U. S. Code, tit. 29, § 158) entitled “ Unfair labor practices ”. That section provides, in pertinent part, “ (a) It shall be an unfair labor practice for an employer * * * (3) by discrimination in regard to Mre or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor orgamzation: Provided, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor orgamzation * * * to require as a condition of employment membersMp therein on or after *270 the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title
It is undisputed that AFTRA is the designated, exclusive representative in accordance with section 9 (subd. [a]) of the NLRA (U. S. Code, tit. 29, § 159).
Plaintiff is and since 1966 has been a dues paying member of AFTRA and is under contract to Mutual. Plaintiff argues that since section 8 (subd. [a], par. [3]) authorizes the union shop or union security provision heretofore quoted, it violates the First Amendment, particularly the provision that “ Congress shall make no law * * * abridging the freedom of speech, or of the press ”. While plaintiff’s contract with Mutual is a separate agreement, Mutual, respecting its obligations under the Code of Fair Practice, requires by such contract that plaintiff be a member of AFTRA. Plaintiff asserts that AFTRA requires that he remain a member in order to continue broadcasting with Mutual, that in 1967 he was required to interrupt his broadcasting by reason of a strike, and that he has felt intimidated by reason of AFTRA’s disciplinary powers.
The question is do the provisions of section 8 (subd. [a], par. [3]), by requiring plaintiff to pay AFTRA dues, unconstitutionally act as a prior restraint on plaintiff’s right of free speech? In our view it does not.
Article I (§ 8, par. [3]) of the United States Constitution provides “ The Congress shall have Power * * * To regulate Commerce with foreign Nations, and among the several States, and with the Indian tribes ”. The regulation of commerce involves not only traffic but commercial intercourse, and the power to regulate commerce is the power “ to prescribe the rule by which commerce is to be governed ” (Gibbons v. Ogden, 9 Wheat. [22 U. S.] 1, 196). This power, including the power to restrain or prohibit and to prescribe rules by which commerce is governed for the general welfare, is complete in itself so long as the specific limitations imposed, by the due process clause of the Fifth Amendment, are not violated (United States v. Carolene Prods. Co., 304 U. S. 144). This power is also a protective power which enables Congress to adopt measures to foster, protect and control commerce, as well as to adopt measures *271 to insure its safety. Acts which impede or burden the free flow of interstate commerce, including acts which grow out of labor disputes are within this protective power.
With the growth and development of this Nation and its commerce it became obvious that industrial peace and stability in labor relations was essential. If such was ever to be achieved, there had to be some governmental guarantees of labor’s right to organize and bargain collectively through representatives of their own choosing. Continuing labor disputes, resulting in part in inequalities in the strength of bargaining power, led to abuses, favored contracts and even violence. Naturally, the flow of interstate commerce was seriously affected.
Section 7 (subd. a) of the ill-fated National Industrial Recovery Act of 1933 (NIRA) [48 U. S. Stat. 198] had produced certain real benefits and encouraged labor to press forward. When the NIRA was held unconstitutional on May 27, 1935, it was succeeded, on July 5,1935, by the National Labor Relations Act (NLRA). This act sought to promote industrial peace by encouraging organization and collective bargaining through representatives of labor’s own choosing (NLRA, § 7; U. S. Code, tit. 29, § 157). Majority representation was established as a desirable principle (NLRA, § 9; U. S. Code, tit. 29, § 159). The necessary result was some equalization of bargaining strength between labor unions and employers. As a safeguard against abuses by either, certain acts or conduct were defined as unfair labor practices (NLRA, § 8; U. S. Code, tit. 29, § 158). NLRA specifically forbids “ any unfair labor practice affecting commerce.” Its constitutionality has been upheld as a valid exercise of Congressional power in a case which dealt with manufactured products (Labor Bd. v. Jones & Laughlin, 301 U. S. 1), and later, one involving farm produce (Santa Cruz Co. v. Labor Bd., 303 U. S. 453).
In the Jones & Laughlin case (supra, p. 33) the Supreme Court spoke of the right of employees to self-organization and to representation of their own choosing, for “ collective bargaining or other mutual protection without restraint or coercion by their employer ”, as a fundamental right, on a par with the right of an employer “ to organize its business and select its own officers and agents.”
*272 It is clear that AFTRA and Mutual acted within the scope of the law.
Plaintiff has a right to be protected in the exercise of his freedom of speech. However, plaintiff’s contention that his fight to free speech is affected is totally without merit. The power of Congress to regulate commerce is contained in article I of the Constitution. The guarantee of freedom of speech appears in the Constitution in. the First Amendment, which expressly forbids Congress to make any law abridging the freedom of speech. This prohibition similarly affects the States by virtue of the due process clause of the Fourteenth Amendment. (See N. Y. Const., art. I, § 8.)
“ The cardinal principle of statutory construction is to save and not to destroy * * * as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a seripus doubt the rule is the same. ’ ’ (Labor Bd. v. Jones & Laughlin, supra, p. 30.)
Freedom of speech in its essence involves no previous restraint upon utterance or publication. It does not confer immunity, for abuse of the right will subject the offender to legal punishment. (See De Jonge v. Oregon, 299 U. S. 353, 364.) The tests for abuse have been referred to as “ clear and present danger ” (Schenck v. United States, 249 U. S. 47; see, also, Stromberg v. California, 283 U. S. 359), or the common-law test of dangerous tendency (Gitlow v. New York, 268 U. S. 652 [Holmes and Brandéis, JJ. dissenting]). The prevailing view at present is the “ clear and present danger ” test (Terminiello v. Chicago, 337 U. S. 1; Thornhill v. Alabama, 310 U. S. 88).
We look now to the record of what actually occurred with respect to plaintiff. In 1967, when a strike occurred he was requested to refrain from broadcasting. He did so. Apparently there was a picket line maintained by the union. The right to picket peacefully for a legal purpose as a means of communication and persuasion in labor disputes has been recognized and upheld as being valid (Thornhill v. Alabama, 310 U. S. 88, supra;, Carlson v. California, 310 U. S. 106). However, even peaceful picketing “ cannot dogmatically be equated with the constitutionally protected freedom of speech ” (Teamsters Union v. Hanke, 339 U. S. 470, 474). The character, quality and *273 circumstances of the act frequently determine its legality. ‘ ‘ The effort in the cases has been to strike a balance between the constitutional protection of the element of communication in picketing and ‘ the power of the State to set the limits of permissible contest open to industrial combatants.’ ” (Teamsters Union v. Hanke, supra, p. 474.) The request to refrain from broadcasting and, in effect, to respect the picket line, was not a request to do an illegal act, but a request to a member to aid in strengthening the union. He could have refused, as the record indicates others did, without retaliation. Admittedly, future strikes might result differently. The request to do a legal act would not wipe out the obligation to pay dues or to tender an equivalent sum.
There is nothing in the record which suggests, even remotely, that AFTRA attempts to censor plaintiff’s broadcasts, or that plaintiff is not free to express his views fully and freely, nor even that he is, or has been, punished or disciplined for the expression of such views. The contention of prior restraint must fall for it does not appear that plaintiff’s fundamental right of free speech or liberty has been infringed.
There remains then the question of whether the requirement that plaintiff pay dues or tender an equivalent sum, in order to broadcast over Mutual, violates plaintiff’s right of free speech or personal liberty. The statute permits a union security shop. Aside from that we look to determine if such a requirement js reasonable in rational experience.
Laws are made not for the individual but for the benefit and protection of the whole body. The rights of employees were only secured through organization and protected by legislation and organization. Each employee must bear a fair share of the financial burden of union representation, with the union’s obligation under the NLRA being to represent all employees of thé class or craft it represents, regardless of union affiliation. (Machinists v. Street, 367 U. S. 740, 761-764.)
“ It is a principle of general application that the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf, and that such a grant of power will not be deemed to dispense with all duty toward those for whom it is exercised unless so expressed ” (Steele v. Louisville & Northern R. R. Co., *274 323 U. S. 192, 202). The union has the obligation to act without hostile discrimination. ‘ ‘ This does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit ” (Steele v. Louisville & Northern R. R. Co., supra, p. 203).
The fact that plaintiff may elect to bargain for himself does not relieve AFTRA of its obligation, if requested to do so. If plaintiff be exempted from payment of dues no good reason exists why other, members, perhaps not so well known, should not also be granted exemption, In time this would mean the end of union organization and the return to a species of jungle warfare which inevitably would impede and obstruct interstate commerce.
However, in Machinists & Aerospace Workers v. NLRB (412 U. S. 84) the Supreme Court affirmed a judgment of the Court of Appeals sustaining the board’s finding of an unfair labor practice on the. part of the union. In that case the union had a collective bargaining agreement with the Boeing Company. The day after expiration of the agreement, the union called a strike, which lasted 18 days, and picketed one of Boeing’s plants. One hundred forty-three union members crossed the picket line to work, 61 of whom resigned their membership prior to returning to work and 58 thereafter. All were fined by the union. There was no evidence that the union members either knew or had consented to any limitation on their right to resign. In fact, neither the constitution nor the by-laws of the union contained any provision expressly permitting or forbidding resignations. The board ordered the union to cease and desist from seeking court enforcement of the fines as an unfair labor practice and the union appealed.
The court left open “ the question of the extent to which contractual restriction on a member’s right to resign may be limited by the [National Labor Relations] Act.” It applied the law *275 “ which normally is reflected in our free institutions — the right of the individual to join or to resign from associations, as he sees fit ‘ subject of course to any financial obligations due and owing ’ the group with which he was associated.” (Id., p. 88; see, also, NLRB v. Textile Workers, 409 U. S. 213, 217.)
In the instant case, there are agreements extant. Presumably, the members of AFTRA are aware of their rights and obligations thereunder. The dues and fees requirement of the agreement does not represent governmental action, but a contractual obligation. Resort by the union to the NLRB or to State or Federal courts for enforcement of the requirement could conceivably involve governmental action (cf. Driscoll v. International Union of Operating Engrs., Local 139, 484 F. 2d 682).
In Hammond v. United Papermakers & Paperworkers Union (462 F. 2d 174) plaintiff, a Seventh Day Adventist, refused to join the union or pay the equivalent of dues and was discharged from his employment by reason of the union shop agreement. The court affirmed summary judgment dismissing the complaint, noting that Congress has authorized union shop clauses “ as permissible, contractual provisions in a collective bargaining agreement between a union and management. ’ ’ (Id., p. 175; see, also, Linscott v. Millers Falls Co., 440 F. 2d 14, cert. den. 404 U. S. 872.)
The language used in NLRB v. Textile Workers (supra) where neither the union-management agreement nor the union’s constitution or by-laws defined or limited the circumstances under which a member could resign, is significant. The finding by the NLRB of an unfair labor practice on the part of the union in coercing the employees by the imposition of fines, in its exercise of rights guaranteed in section 7 of the NLRA, was affirmed. The court said, “ when a member lawfully resigns from the union, its power over him ends * * * Under § 7 of the Act the employees have ‘ the right to refrain from any or all ’ concerted activities relating to collective bargaining or mutual aid and protection, as well as the right to join a union and participate in those concerted activities.” (Id., pp. 215, 216.) The associational rights of individuals are protected under section 7 and restraint or coercion prohibited under section 8. However, section 8 does not impair “ the right of a labor organization to *276 prescribe its own rules with respect to acquisition or retention of membership therein ” (U. S. Code, tit. 29, § 158, subd. [b]).
Where a collective bargaining agreement contains a union shop clause, which defines or limits the conditions under which a union member may resign, until the member takes action in accordance with such procedure, he is bound to pay dues or their equivalent. In the absence of an unwarranted abridgment of constitutional rights in a particular case, reasonable regulations should be favored. Reasonable fees, reasonably adjustód to the needs and the circumstances should be approved. Every tax or every fee or even dues charged, will not, of necessity, constitute interference with a constitutional right (see Matter of Steinbeck v. Gerosa, 4 N Y 2d 302). So long as plaintiff remains a member of AFTRA he is bound to pay dues or their equivalent by reason of the agreement, the union’s constitution or its by-laws. If and when he lawfully severs his ties, he will be free of AFTRA’s control. Jurisdiction to determine an unfair labor practice, if plaintiff believes that is what is involved here, lies with the NLRB and not with this court.[1]
Whether or not one be classified as a “ member ” is hardly determinative so long as union obligations are met. In the absence of a specific provision in the union constitution or by-laws, a union member may submit a voluntary resignation at any time (NLRB v. Mechanical & Allied Prod. Workers, Local 444, 427 F. 2d 883; Communication Workers v. NLRB, 215 F. 2d 835, 838-839).
It has been held that a union can enforce, in a State court, a fine levied against a strikebreaking member where the union’s constitution or by-laws contain a provision defining or limiting the circumstances under which a member could resign (NLRB v. Allis-Chalmers Mfg. Co., 388 U. S. 175). Such action neither violates section 7 nor constitutes an unfair labor practice under section 8 (subd. [b]) of the NLRA.
Nor is it unreasonable to require payment. “ Union activity, is by its very nature group activity, and is grounded on the notion that strength can be garnered from unity, solidarity and *277 mutual commitment ” (NLRB v. Textile Workers, 409 U. S. 213, 221, supra, dissenting opn. of Blackmun, J.). We pay tolls on highways, the licensee of a radio or television station undoubtedly pays a fee for the privilege, as does the sponsor of or advertiser on a program aired on television or radio. AFTBA’s services entail expenses. Since such services are for the benefit of all it represents, all should share in the cost. The salaries of others provide a standard by which the value of plaintiff’s services can be measured. Without them, and without organization, plaintiff as a single individual might well be powerless to command the salary presently received.
Freedom of speech and freedom of the press are fundamental rights. Denial of the right violates basic principles of liberty and justice and is not to be tolerated in a free society. The mere allegation of such denial does not establish the fact, and that is the weakness of plaintiff’s position. I would agree with J udge Beieant “ It is not necessary to declare Section 8(a) (3) unconstitutional on its face in order to effectuate plaintiffs’ rights ” (Evans v. American Federation of Tel. & Radio Artists, 354 F. Supp. 823, 847).[2]
The conclusion here reached, however, is that the requirement for payment of dues, and the union shop provision are not shown on this record to violate plaintiff’s rights, nor does such payment amount to a tax upon his right of free speech, authorized by Government by reason of section 8 (subd. [a], par. [3]). The dues and union shop requirement do not become Government action by reason of a protected right under Federal law to organize and bargain collectively. (See Driscoll v. International Union of Operation Engrs., Local 139, supra.)
The rights and obligations under NLBA meet a social and economic need and such rights and duties are within the power of Congress to guarantee. The union shop provision in AFTBA’s contract with Mutual might bar access of Mutual’s channels to plaintiff if he ceased to pay dues or their equivalent to AFTBA. It would not limit his right to freely express his views, or to utilize other channels or avenues not so bound by agreement. Section 8 (subd. [a], par. [3]) also bars an employer *278 from discriminating against a nonmember of a union under stated conditions not here relevant.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. (See Buckley v. American Federation of Tel. & Radio Artists, 496 F. 2d 305, revg. sub nom. Evans v. American Federation of Tel. & Radio Artists 354 F. Supp. 823].)

. Reversed sub nom. Buckley v. American Federation of Tel. & Radio Artists, 496 F. 2d 305,