Cooke, J. (dissenting).
I dissent and vote to reverse the order of Appellate Term and to dismiss the information.
Defendants were charged with the violations of disorderly conduct (Penal Law, § 240.20) and trespass (Penal Law, *539 § 140.05), arising out of certain picketing activity at the front entrance of the Finast supermarket in the Green Acres Shopping Center at Valley Stream. Certain of the defendants were also charged with trespass in relation to such activity at the Foodtown supermarket in Bethpage. The trespass accusations were predicated upon the refusal by defendants to accede to demands by store managers to move the picketing to another area.
After a nonjury trial, the District Court of Nassau County rendered a judgment of guilty on the charges of trespass and not guilty as to the disorderly conduct counts. In affirming the convictions for trespass, Appellate Term declared: "The record is replete with testimony that the picketers unreasonably interfered with free ingress and egress to and from the supermarkets, the complainants herein, and defied a 'lawful order’ from an 'authorized person’ not to remain in the area (see Penal Law, §§ 140.05 and 140.00 [5] of Amalgamated Food Employees Union Local 590 et al. v. Logan Valley Plaza, Inc., et al., 391 U. S. 308, 320; People v. Brown, 25 N Y 2d 374).”
Section 140.05 of the Penal Law reads: "A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises.” The phrase "enters or remains unlawfully”, as used in said section, is defined in subdivision 5 of section 140.00 of the Penal Law providing, in pertinent part: "A person 'enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his interest, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person.”
The elements necessary to sustain a conviction for trespass do not include a finding that a defendant interfered with or obstructed another’s ingress or egress. Proof to such effect would be relevant to a charge of disorderly conduct (see Penal Law, § 240.20, subd 5), but defendants were acquitted of those counts. Appellate Term, in reviewing the trespass conviction, erred in placing any reliance upon evidence as to interference in that it had no authority to make a new finding of fact embracing a charge for which defendants had been acquitted. Ordinarily, because of the impossibility of ascertaining what weight Appellate Term gave to the testimony of interference, the case should be remitted to that court. Here, it is unneces *540 sary to require such a result. In the light of the statutory provisions mentioned (Penal Law, § 140.00, subd 5; § 140.05), defendants’ picketing on property open to the public was a permissible exercise of their right to speak freely under our State Constitution (NY Const, art I, § 8).
The right to picket peacefully has long been recognized as a valid method of communication, especially in labor disputes (see Thornhill v Alabama, 310 US 88; Carlson v California, 310 US 106; Lewis v Aftra, 34 NY2d 265). "The effort in the cases has been to strike a balance between the constitutional protection of the element of communication in picketing and 'the power of the State to set the limits of permissible contest open to industrial combatants’ ” (Teamsters Union v Hanke, 339 US 470, 474; Lewis v Aftra, supra, p 273). One aspect of the balance sought to be attained concerns the circumstances under which private property may be utilized for picketing activity, for "[i]t is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state” (Hudgens v N.L.R.B., 424 US 507, 513; see, also, Columbia Broadcasting v Democratic Committee, 412 US 94; Watchtower Bible & Tract Soc. v Metropolitan Life Ins. Co., 297 NY 339). A review of the cases discussing this problem demonstrates a history of "considerable confusion” (see Hudgens v N.L.R.B., supra, p 513). In Food Employees v Logan Val. Plaza (391 US 308), the United States Supreme Court was faced with a situation where members of a local labor union conducted peaceful picketing in the immediate vicinity of a store located in a large shopping center which employed nonunion employees. In reversing the issuance of an injunction that required all picketing to be carried outside the perimeter of the shopping center, the court stated (at pp 319-320): "All we decide here is that because the shopping center serves as the community business block 'and is freely accessible and open to the people in the area and those passing through,’ Marsh v. Alabama, 326 U. S., at 508, the State may not delegate the power, through the use of its trespass laws, wholly to exclude those members of the public wishing to exercise their First Amendment rights on the premises in a manner and for a purpose generally consonant with the use to which the property is actually put.” Four years later, on June 22, 1972, said court decided Lloyd Corp. v Tanner (407 US 551), involving the distribution throughout the mall of a shopping center of *541 handbills protesting American intervention in the Vietnam conflict. In determining that such activity was not protected by the First Amendment, the court distinguished Logan Val. (supra) on the ground that in Logan Val. the picketing was directed to a store in the shopping center, a circumstance not present in Lloyd (see Lloyd Corp. v Tanner, supra, pp 560-561).
In Hudgens v N.L.R.B. (supra, p 512), a labor picketing case decided on March 3, 1976, the opinion of the court recognized that the history of that litigation had been one "of considerable confusion, engendered at least in part by decisions of this Court that intervened during the course of the litigation” and declared (p 518) that "we make clear now, if it was not clear before, that the rationale of Logan Valley did not survive the Court’s decision in the Lloyd case.” Mr. Justice White (p 524), concurring in the judgment, stated that "Lloyd Corp. v. Tanner * * * did not overrule Logan Valley, either expressly or implicitly”. Mr. Justice Powell, with whom Chief Justice Burger joined, filed a concurring opinion which asserted (p 523): "Although I agree with Mr. Justice White’s view concurring in the result that Lloyd Corp. v. Tanner * * * did not overrule Amalgamated Food Employees Union v. Logan Valley Plaza * * * and that the present case can be distinguished narrowly from Logan Valley, I nevertheless have joined the opinion of the Court today.” Mr. Justice Marshall, joined by Mr. Justice Brennan, dissented and urged that Logan Val., after Lloyd, remained "good law”, binding on the State and Federal courts, and that the First Amendment principles underlying Logan Val. are sound. Upon totaling, we find but 3 out of the 8 participating members of the Supreme Court who subscribed to the view that Logan Val. was discarded by Lloyd. Interestingly, after Lloyd and on December 17, 1974, American Radio Assn. v Mobile S. S. Assn. (419 US 215), was decided, and in it Logan Val. was discussed by the Supreme Court without even an intimation that it should no longer be followed (p 230).
Hudgens cannot be read without a realization that there is still "considerable confusion” in this area. An individual should be given sufficient insight to intelligently determine whether a particular course of conduct will subject him or her to criminal liability and, in view of the dubiety created by varying conclusions relating to the First Amendment to the United States Constitution as it pertains to labor picketing in a shopping center, it is deemed necessary to apply the free *542 speech provision of our State Constitution (NY Const, art I, §8).
Under this analysis, it is concluded that the rationale of Logan Val. supplies a commendable balance between freedom of expression and intrusions on privately owned property used as a shopping center. As observed in Marsh v Alabama (326 US 501, 506): "Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it.” The present day shopping center possesses few characteristics traditionally identified as part of the private domain. In this view, the words of Mr. Justice Marshall are apt: "In Logan Valley we recognized what the Court today refuses to recognize—that the owner of the modern shopping center complex, by dedicating his property to public use as a business district, to some extent displaces the 'State’ from control of historical First Amendment forums, and may acquire a virtual monopoly of places suitable for effective communication. The roadways, parking lots and walkways of the modern shopping center may be as essential for effective speech as the streets and sidewalks in the municipal or company-owned town” (Hudgens v N.L.R.B., 424 US 507, 539-540, supra [dissenting opn]).
We would hold, therefore, that where a privately owned shopping center has been so "thoroughly clothed in the attributes of public property that it may not be completely closed as a public forum to those who wish to present otherwise lawful communications” (American Radio Assn. v Mobile S. S. Assn., 419 US 215, 230), a labor union may peacefully picket there to disseminate its views, without fear of criminal liability under a trespass statute. This in no way authorizes conduct which would interfere with the normal commerce or traffic of the center itself, but it does foster effective legal action by labor unions in locations offering a reasonable avenue of communication.
In sum, the demands of the store managers in this case, compelling the defendants to terminate lawful activity, could not be deemed "lawful” in their own right (see Penal Law, § 140.05) and the convictions for trespass should be reversed and the informations dismissed.
Judges Jasen, Gabrielli, Jones and Wachtler concur with *543 Judge Fuchsberg; Judge Cooke dissents and votes to reverse in a separate opinion in which Chief Judge Breitel, concurs.
Order affirmed.