*255 Wachtler, J.
(concurring). In my view the Grand Jury subpoena directed to the reporter in this case was properly quashed, not only because the Shield Law affords a privilege in this instance, but also because the reporter and the press generally should be entitled, as a matter of right, to claim this protection under the State Constitution. Since the Grand Jury has asserted a right to compel the reporter’s testimony as an incident to its general power to investigate under the State Constitution (NY Const, art I, § 6), we must recognize that the State Constitution also guarantees a free press (NY Const, art I, § 8) and should leave no doubt that it necessarily affords a reporter or newspaper the right not to be held in contempt for refusal to disclose news sources to State investigators or investigative bodies, irrespective of any privileges granted by the Legislature now or in the future.
The fact that the Supreme Court has held the First Amendment applicable to the States does not eliminate the right or the need of this State to provide a distinct guarantee of freedom of the press under the State Constitution (PruneYard Shopping Center v Robins, 447 US 74, 81). It is often forgotten that diversity is the essence of federalism and that the Federal Constitution only guarantees minimum protections, leaving to the States the task of affording additional or greater rights under their Constitutions, tailored to the special needs and traditions of the various States (People v Adams, 53 NY2d 241, 250). There is probably no area in which State attitudes are more diverse, and thus where independent State constitutional rights serve their intended purposes, than in the area dealing with freedom of expression (e.g., Miller v California, 413 US 15).
This State has long provided one of the most hospitable climates for the free exchange of ideas. The tradition existed in colonial times, as is exemplified by the acquittal in 1735 of John Peter Zenger who, interestingly, was prosecuted for publishing articles critical of the New York colonial Governor after he refused to disclose his source (23 Encyclopaedia Britannica [1956 ed], p 944; Hentoff, The *256 First Freedom [1980], pp 63-68). In the 19th century a large portion of the publishing industry was established in New York and the State began to serve as a cultural center for the Nation. It still enjoys that status.
It is consistent with that tradition for New York to provide broad protections, often broader than those provided elsewhere, to those engaged in publishing and particularly to those performing the sensitive role of gathering and disseminating news of public events. The ability of the press to gather information is deterred if the press can be compelled to disclose their sources to the government. Similarly, publishers and reporters will be reluctant to publish what they have learned if they can be jailed, fined, or otherwise held in contempt for refusing to disclose the source of their information to State investigators.
In my view, therefore, protection from contempt for refusal to disclose a source is not merely a privilege granted to the press by the Legislature, but is essential to the type of freedom of expression traditionally expected in this State and should be recognized as a right guaranteed by the State Constitution.
In effect, the majority assumes that the answer to that question would be in the affirmative and concludes that even so, the statute would protect petitioner, notwithstanding the constitutional mandate of section 6 of article I that “The power of grand juries to inquire into the wilful *257 misconduct in office of public officers * * * shall never be * * * impaired by law.” Clearly, section 79-h of the Civil Rights Law is a “law” and just as clearly by using it to block inquiry concerning whether a public officer violated the Penal Law, that law impairs the constitutional power of the Grand Jury to inquire into misconduct in public office.
Notwithstanding the clarity of the constitutional provision and the rule that when the language of the Constitution “is clear and leads to no absurd conclusion there is no occasion, and indeed it would be improper, to search beyond the instrument for an assumed intent” (People v Carroll, 3 NY2d 686, 689; accord Anderson v Regan, 53 NY2d 356, 362; Matter of Wendell v Lavin, 246 NY 115, 120), the majority concludes, on the basis of the statement of the sponsor to the 1938 Constitutional Convention, and an overly broad interpretation of that statement* in Matter of Wood v Hughes (9 NY2d 144,150), which had nothing at all to do with the meaning of “impaired” as used in section 6 of article I, that it does not reach a law which “only indirectly hinder[s] a grand jury’s power to investigate.” (Majority opn, at p 253.) Respectfully, I cannot accept that conclusion.
As both the Supreme Court and this court have many times recognized, the free press provisions of the Federal and State Constitutions (US Const, 1st Arndt; NY Const, art I, § 8) are not absolute York Times Co. v Sullivan, 376 US 254; Beauharnais v Illinois, 343 US 250; Speiser v Randall, 357 US 513; People v Ferber, 57 NY2d 256; Lewis v American Federation of Tel. & Radio Artists, 34 NY2d 265; Brown v Kingsley Books, 1 NY2d 177). Moreover, in determining whether the First Amendment’s limitations have been infringed, a “declaration of the State’s policy * * * weights] heavily” (Cantwell v Connecticut, 310 US 296, 307-308; Bridges v California, 314 US 252, at p 260). Because the issue would reach the Supreme Court, as that court put it in Bridges (supra, at p 261), “encased in the armor wrought by” section 6 of article I of the State Constitution, there is little probability that a conclusion *258 that section 79-h of the Civil Rights Law is limited by that State constitutional provision would be held to contravene the First Amendment.
The issue is thus reduced to consideration of the competing policies expressed in the mandate of section 6 of article I of the State Constitution against impairment of the Grand Jury’s power of inquiry as to misconduct of public officials and in the direction of section 8 of article I of the same document that “no law shall be passed to restrain or abridge the liberty * * * of the press.” As the majority’s footnote 7 recognizes, those provisions are to be so construed as to render them capable of operating harmoniously (Matter of Social Investigator Eligibles Assn. v Taylor, 268 NY 233, 237; Matter of Seeley v Stevens, 190 NY 158, 162; see McKinney’s Cons Laws of NY, Book 2, NY Const, art I, §§ 1-6, Rules of Constitutional Interpretation, § 6, p 8). To do so requires the conclusion, as the Appellate Division held, that the Shield Law be construed not to impair the power of the Grand Jury. This is so for a number of reasons. First, section 6 of article I is not a law; it is a constitutional mandate and, as such, is beyond the scope of section 8 of article I. Second, as noted above, section 8 of article I is not absolute; the press enjoys but a qualified privilege against defamation actions, and speech which presents a clear and present danger to the administration of justice may be punished as a contempt. Third, the Legislature has determined that such a danger exists when Grand Jury secrecy is violated, and the People, through section 6 of article I, have determined that the Legislature may do nothing which impairs the power of a Grand Jury to investigate such a violation by a public official.
Nor is the fact that other statutory and common-law privileges would likewise yield to section 6 of article I a reason for adopting the majority’s conclusion. The right to counsel provision of the same section would, as the majority concedes, protect petitioner when called before the Grand Jury and may conceivably carry with it much, if not all, of the attorney-client privilege, without which counsel’s effectiveness would in many situations be severely limited. As to the other privileges, however, and as to the attorney-client privilege, if the right to counsel provision of *259 section 6 is held not to include it, those privileges will yield (cf. Matter of Keenan v Gigante, 47 NY2d 160, cert den sub nom. Gigante v Lankler, 444 US 887), as section 79-h of the Civil Rights Law must, because the Legislature “has sought to invade a field from which under the Bill of Rights [it] is excluded” (People v Barber, 289 NY 378, 385).
For the foregoing reasons and for the reasons stated in the opinion of Justice Paul J. Yesawich, Jr., at the Appellate Division, I would affirm the order of that court.
Judges Jones, Wachtler, Simons and Kaye concur with Chief Judge Cooke; Judge Wachtler concurs in a separate concurring opinion; Judge Meyer dissents and votes to affirm in another opinion in which Judge Jasen concurs.
Order reversed, etc.

 (Compare Van Voorhis, Note on History in New York State of Powers of Grand Juries, 26 Albany L Rev 1.)