INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO LOCAL LODGE 714, et al., Defendants.

No. 87 C 1708.

United States District Court, N.D. Illinois, E.D.

Oct. 7, 1988.

Bernard M. Mamet & Associates, Ltd., Chicago, Ill., Blake & Uhlig, P.A., Kansas City, Mo., for plaintiff.

Richard J. Tupper, Cornfield & Feldman, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

Before this court is plaintiff's motion to reinstate an injunction enforcing a trusteeship over defendants. Also before this court is defendants' motion for an injunction dissolving the trusteeship imposed by plaintiff and compelling return of all monies, books, and records seized as a result of the trusteeship. For the reasons stated herein, plaintiff's motion is denied and defendants' motion is granted.

## I. FACTS

The instant case involves a struggle over the assets of a local union lodge whose membership in large part defected to a local chapter of a competing union. Plaintiff International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO ("International") desires to possess, by enforcement of a trusteeship, all books, records, and funds of defendant Local Lodge 714 of International ("Local 714"). Those assets

were taken by several individual defendants (former officers and members of Local 714) when the competing Local 15 of the Independent Workers of North America ("Local 15") was formed. Apparently, defendants used Local 714's funds to finance Local 15's activities. Finding that International fulfilled all statutory and contractual prerequisites for imposing a trusteeship on the basis of financial malpractice (using Local 714's funds for Local 15's purposes), this court entered a preliminary injunction enforcing the trusteeship and ordered defendants to deliver all assets removed from Local 714 to the trustee appointed by International. *International Bhd. of Boilermakers v. International Bhd. of Boilermakers, Local Lodge 714*, 663 F.Supp. 1071 (N.D.Ill.1987), *vacated,* 845 F.2d 687 (7th Cir.1988).

Defendants appealed this court's order, and the Seventh Circuit vacated the injunction and remanded for further factfinding. *International Bhd. of Boilermakers v. International Bhd. of Boilermakers, Local Lodge 714*, 845 F.2d 687 (7th Cir.1988). The unresolved question raised by the Court of Appeals was whether Local 714 maintained at least ten members after the mass defection to Local 15. The Court of Appeals essentially ruled that if ten or more members of Local 714 remained, the trusteeship imposed for financial malpractice was proper, and the injunction enforcing it should be reinstated. *Id.* at 695. If, however, Local 714's membership fell to less than ten, the use of a trusteeship to recapture Local 714's assets was inappropriate. *Id.* This determination rested on a provision in Local 714's constitution pertaining to minimum required membership.

Under the Seventh Circuit's interpretation of Local 714's constitution, once membership dips below ten, the local automatically disbands. *Id.* at 692. If Local 714 ceased to exist, the court opined that International had no subordinate body over which a trusteeship could be imposed. If such were the case, the court suggested that International might succeed in obtaining Local 714's assets by invoking a forfeiture provision in Local 714's constitution. *Id.* at 695. According to that provision, if

Local 714 falls short of its required minimum membership, all its assets revert to International.

## II. DISCUSSION

The first issue presented for resolution is whether Local 714 possessed ten or more members on January 30, 1987, when the trusteeship was imposed. As a preliminary matter, this court notes that the presumption of validity once accorded to International's trusteeship under 29 U.S.C. § 464(c) no longer exists. Pursuant to § 464(c) of the Labor Management Reporting and Disclosure Act of 1959, trusteeships imposed on an affiliate by a parent labor organization for reasons specified in 29 U.S.C. § 462 (such as financial malpractice) are presumed valid for a period of 18 months. During this period, the trusteeship may be voided only by clear and convincing evidence that the trusteeship was not established or maintained for a purpose allowable under § 462. In the present case, the 18–month period expired on July 30, 1988. As a result, the number of remaining Local 714 members need only be established by a preponderance of evidence by the party seeking injunctive relief.

Section 7 of the National Labor Relations Act guarantees a union employee the right to resign from union membership. 29 U.S.C. § 157. However, the union's constitution and bylaws may impose reasonable sanctions and limitations on the exercise of such right. *NLRB v. Martin A. Gleason, Inc.,* 543 F.2d 446, 476 (2nd Cir. 1976); *Basilicato v. International Alliance of Theatrical Stage Employees,* 479 F.Supp. 1232, 1243 (D.Conn.1979). In the absence of a specific provision in a union constitution or bylaws, a union member may voluntarily resign at any time. *Lewis v. American Fed'n of Television and Radio Artists,* 34 N.Y.2d 265, 276, 357 N.Y.S. 2d 419, 431, 313 N.E.2d 735, 743, *cert. denied,* 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1974); *see also NLRB v. Mechanical and Allied Prod. Workers Union, Local 444,* 427 F.2d 883, 884 (1st Cir. 1970) (written notice requirements in union

constitution pertaining to "withdrawals from the trade" did not limit right of member to orally resign from union). So long as procedures for resignation are absent from the union's constitution and bylaws, resignation may be accomplished in any manner sufficient to show a voluntary decision to part with union membership. *See Mechanical and Allied Prod. Workers Union, Local 444,* 427 F.2d at 884 (orally informing union president of intention to quit and destroying membership card in president's presence held sufficient); *Johnson v. Ebert,* Lab.L.Rep. (CCH) ¶ 10,961 (S.D.N.Y.1978) (announcement of resignation at union meeting deemed effective); *Graphic Arts Int'l Union v. Graphic Arts Int'l Union, Local 529,* 529 F.Supp. 587, 590–92 (W.D.Mo.1982) (disaffiliation vote by ballot found sufficient).

Applying the foregoing standards to the facts in the present case clearly establishes that Local 714 had less than ten members at the time the trusteeship was imposed. Although Local 714's constitution prescribes a procedure for effectuating withdrawal "for the purpose of going into business or entering another occupation," the constitution is devoid of any provision for resignation or disaffiliation. As such, simple but clear manifestation of intent to voluntarily terminate membership in International is sufficient to effectuate resignation.

The facts reveal that in August 1986, International held an election for president and other key offices. Dismayed with the results of the election, various International members decided to form a competitive labor organization, the Independent Workers of North America ("Independent"). The president of Local 714, Michael Bellmore, met with officers of Independent in late October 1986. As a result of the meeting, Bellmore called an executive board meeting of Local 714 at which the board voted to distribute a petition to disaffiliate and a petition to revoke dues withholdings. At the time the petitions were distributed by Local 714's shop stewards, Local 714 had 135 members, all of whom were employed by Quaker Industries in Antioch, Illinois.[1] One hundred thirty of the 135 members signed both petitions.

At a meeting of Local 714 on November 13, 1986, a vote was taken by secret ballot. One hundred fourteen members took part in the vote. One hundred twelve voted in favor of disaffiliation, and two voted to remain with International. Shortly thereafter, former officers and members of Local 714 formed Local 15 of Independent and took steps to gain certification as the collective bargaining representative for Quaker Industries.

■ Although case law recognizes that voting to disaffiliate at a union meeting constitutes voluntary resignation, the vote taken at the November 13 meeting does not conclusively establish that Local 714's membership dipped below ten because only 114 of the local's 135 members were in attendance. Thus, the critical question becomes whether the petitions signed by all but five members were alone sufficient to trigger resignation. This court believes they were.

The language of the petitions explicitly provides that signator members were disaffiliating from International, revoking check-off authorizations for payment of membership dues to International, and declaring Independent as their new bargaining representative. No clearer expression of resignation from International is required. The vote taken at the November 13 meeting simply reiterated the conclusion that the vast majority of Local 714 members chose to part with their International membership.

This determination is consistent with the result reached in *Bradley v. Local 119, Int'l Union of Elec., Radio and Mach. Workers,* 236 F.Supp. 724 (E.D.Pa.1964). In *Bradley,* the court was required to determine whether the actions of plaintiff union members resulted in resignation from the defendant union. In reaching its

1. Although defendants' answer originally estimated Local 714's membership to be 141, uncontradicted testimony received during a preliminary injunction hearing before Magistrate Bucklo clearly establishes that Local 714's actual membership was 135.

decision, the court drew a distinction between members who had simply revoked check-off authorizations and members who, in addition to revoking the payroll dues withholdings, executed letters expressing a desire to withdraw or resign. *Id.* at 729. The mere act of revoking a check-off authorization was deemed insufficient to constitute a "clear and deliberate termination of membership." *Id.* However, combining that act with submission of a signed writing communicating a decision to part with the union was viewed as conclusive evidence of resignation from the union. *Id.* In the instant case, 130 of Local 714's 135 members followed a similar procedure. In addition to revoking payroll deduction authorizations for payment of dues to International, 130 members declared they were disaffiliating from International and joining Independent.

Although International submits records showing that it continued to receive dues payments from a great majority of Local 714's 135 members after the petitions were signed and the trusteeship was imposed, such evidence cannot be properly equated with proof that membership continued. The record of dues payments simply reflects the fact that Quaker Industries initially refused to honor the check-off revocations submitted by 130 of its employees. International also offers the affidavit of one of its officers, Steven Jewell, who represents that Local 714 had more than ten members when the trusteeship was imposed. Significantly, Mr. Jewell does not attempt to name any of the purported members or provide an exact number of those remaining at the time the trusteeship was declared. In light of the fact that only five members declined to sign the aforementioned petitions and only two members voted to oppose disaffiliation, it is unclear how Mr. Jewell arrived at his conclusion that Local 714 had in excess of ten members on January 30, 1987. Rather, the evidence presented demonstrates that after the petitions were signed, Local 714 fell below its required minimum membership and automatically disbanded.

Reaching the foregoing determination, however, does not resolve the dispute over Local 714's assets. Although the Seventh Circuit observed that Local 714's constitution provides for return of all assets to International in the event of disbandment, International has steadfastly refused to assert a claim under the forfeiture provision. Though tactical considerations may explain International's initial reluctance to advance alternate theories for recovering Local 714's assets, International's continued failure to assert a claim for return of the assets under the forfeiture provision defies understanding. International urges this court to overlook this "pleading technicality" and order that it receive the assets currently being held by the trustee. International's solution, however, is unacceptable.

Defendants suggest that International's disinclination to pursue a claim under the forfeiture article stems from International's fears that such a provision might be held unenforceable. At present, defendants offer no elaboration on this point, but make clear that if International were to add a claim under the forfeiture clause, they would attack its validity. Given the fact that defendants plan to challenge any claim asserted under the forfeiture provision, International's pleading deficiencies simply cannot be ignored.

Before this court will consider International's request for Local 714's assets, International must amend its complaint and allow defendants the opportunity to assert arguments concerning the forfeiture provision's enforceability. Until this issue is resolved, International is not entitled to possession of Local 714's assets. Because the trusteeship declared by International is invalid by virtue of Local 714's dissolution, the assets are no longer properly controlled by the trustee. Thus, defendants, as agents of the former members of the now defunct Local 714, are entitled to receive the assets until final judgment is entered. As a precautionary measure, however, defendants are ordered to maintain all such assets separate and apart from the operations of Local 15 until this action terminates. Defendants should not regard this court's order returning the parties to the

status quo prior to the trusteeship as an ultimate victory. Should International amend its complaint and prevail on a breach of contract claim under the forfeiture provision, defendants will be liable for return of all books and records and the full amount of funds existing at the time Local 714 disbanded.

### III. CONCLUSION

For the foregoing reasons, International's motion to reinstate the injunction enforcing the trusteeship is denied, and defendants' motion for an injunction dissolving the trusteeship is granted. The trustee is ordered to deliver, within five business days of this order, all assets of Local 714 entrusted to the trustee as a result of this court's previous grant of injunctive relief. Defendants are ordered to hold all such assets separate and apart from the operations of Local 15 until termination of this action.

IT IS SO ORDERED.