William C. VINCENT

V.

**PLUMBERS & STEAMFITTERS LOCAL NO. 198 et al.**

Civ. A. No. 72–136.

United States District Court, M. D. Louisiana.

March 12, 1976.

O'Donoghue, Washington, D.C., for defendants.

E. GORDON WEST, District Judge:

Plaintiff, William C. Vincent, brings this suit claiming to have been denied membership in the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (hereinafter "United Association" or "U.A."), and in Plumbers and Steamfitters Local # 198 (hereinafter "Local # 198") in violation of the "Union Member's Bill of Rights" contained in Title I of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401 et seq. He sues for injunctive relief in the nature of an order reinstating him to membership and for money damages resulting from what he alleges to be his illegal expulsion from membership.

The trial was limited to a determination of whether or not the plaintiff was, in fact, a "member" of a union as contemplated by the Union Member's Bill of Rights as contained in Section 101 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411, and whether or not, under the circumstances of this case, the plaintiff was entitled to the protection of that Act. If the plaintiff prevailed, the question of damages and/or other appropriate relief was to be the subject matter of a future hearing.

For the reasons stated in the following Findings of Fact and Conclusions of Law, the Court concludes that the plaintiff cannot prevail in this suit.

### FINDINGS OF FACT

1. Plaintiff has been employed in the plumbing and pipe fitting trade in the Baton Rouge, Louisiana area for several years. He has been a lifelong resident of Baton Rouge, Louisiana.

2. In 1965 the plaintiff enrolled as an apprentice with Local # 198 in Baton Rouge, Louisiana, but for some reason which is not clear from the evidence, he dropped out of that program later that year. He again enrolled as an appren-

Wendell G. Lindsay, Jr., Gill, Lindsay, Seago & Beckner, Baton Rouge, La., for plaintiff.

C. Paul Barker, Dodd, Barker, Boudreaux, Lamy & Gardner, A Division of Dodd & Barker, A Law Corporation, New Orleans, La., Patrick C. O'Donoghue, James R. O'Connell, O'Donoghue &

tice in the same local in 1968 but dropped out of the program later that year. There is no evidence that he ever applied directly to Local # 198 for full membership, nor is there any evidence that he was qualified for membership in that local.

3. Membership in a local union entitles the member to membership in the United Association.

4. Plaintiff somehow learned that it was possible to "buy" a membership in Local # 466 of Provo, Utah, by payment of "under the table" money even though the purchaser was not a resident of the geographic area served by that local. He admits that he knew that this procedure was in violation of union rules.

5. When plaintiff decided to obtain a membership book from the Provo local, it was his intention to then request to transfer to Local # 198. Under the provisions of the Constitution and By-Laws of the United Association, such a transfer could be obtained. Thus, the plaintiff, by the devious means of illegally obtaining membership in the Provo local, could obtain full membership in Local # 198 which he could not obtain by direct application to that local.

6. In 1969, with the aid of a Mrs. Sarah Hurley, a secretary with Local # 198, the plaintiff was put in touch with a Mr. Billy Willard for the purpose of "buying a Provo book." Plaintiff met with Mr. Willard and an application for membership in Provo Local # 466 was prepared. This application stated that plaintiff's address was 491 West 2nd South, Provo, Utah; that the report of the Local # 466 investigation committee was favorable; that the report of the Local # 466 examining board was favorable; that plaintiff's date of initiation was May 11, 1969; and that plaintiff had worked for Mack's Plumbing Co., Los Angeles; U. S. Steel, Geneva Plant, Orem, California; Larsen and Company, Provo, Utah; and Brown Plumbing and Heating, Payson, Utah.

7. On the basis of this application, plaintiff was issued a U.A. membership book by Local # 466, showing an initiation date of May 11, 1969. The book was issued in July of 1969.

8. When the plaintiff and Mr. Willard prepared this application, the plaintiff paid a total of $700, part of which, to the plaintiff's knowledge, was sent to the Provo local as an initiation fee, and part, about one-half, was paid directly to and apparently kept by Mr. Willard. This was the "under the table" money which the plaintiff knew he was paying for this book. This latter payment, to the plaintiff's knowledge, was totally over and above the required initiation fee and was an illicit payment made to "buy" a book to which the plaintiff knew he was not otherwise entitled.

9. Indeed, the plaintiff proposes to this Court that one of its findings of fact should be that "On May 11, 1969, plaintiff fraudulently secured membership in the United Association and Local 466 by giving money over the initiation fee." The Court so finds.

10. Plaintiff never lived in Utah; he never took an examination prior to the issuance of his book to establish his qualifications; he was never examined by the Local # 466 investigating committee; he had never worked for any of the companies listed on his application; and he never took the oath of obligation as a member of the United Association or the Provo local.

11. Mr. Billy Willard, who fraudulently obtained plaintiff's book for him, had done this for others and in doing so had worked with one Osborne Carter. Mr. Carter was later indicted, convicted and sentenced to prison for the crime of mail fraud in connection with fraudulently obtaining union books conferring "membership" in United Association. Both Mr. Carter and Mr. Willard were expelled from membership in United Association for their participation in these schemes to sell United Association membership books.

12. After obtaining the U.A. membership book the plaintiff applied for a transfer from Provo Local # 466 to the Baton Rouge Local # 198. Local # 198 accepted the transfer in accordance with

orders from United Association, but protected the transfer, because it was aware of the fact that the plaintiff had fraudulently obtained his U.A. membership. The officials of Local # 198 knew that the plaintiff was a lifelong resident of Baton Rouge and had never resided in Provo, Utah. Local # 198 advised the U.A. that the information on plaintiff's application to the Provo local was false. At the same time it protested two other transfers, but it did not have the same proof of fraud that it had in connection with plaintiff's membership.

13. Section 170 of the United Association Constitution authorized immediate cancellation of a membership book obtained by fraud.

14. Plaintiff has never denied that he fraudulently obtained his book. He only complains that others who did the same thing were treated differently than he was treated by the United Association.

15. When the uncontradicted fact of fraud became known to the United Association, it immediately, on November 23, 1971, cancelled plaintiff's membership and returned to the plaintiff the monies paid by him to the Provo local as an initiation fee. This was done pursuant to the applicable provisions of the United Association Constitution, and particularly, Section 170 thereof.

16. After being notified of his membership cancellation, the plaintiff advised the U.A. that he would file suit to contest the validity of the provision in the U.A. Constitution providing for cancellation of fraudulently obtained membership.

17. This suit was filed on May 24, 1972.

18. Allegations in the plaintiff's complaint, and statements contained in depositions subsequently taken, indicated that many people had fraudulently obtained membership in the Provo local during the years 1967, 1968, and 1969. Upon learning this, the United Association conducted an extensive investigation and concluded that approximately 128 persons had been improperly admitted to membership in the Provo local and the U.A. during that three year period.

19. The investigation also showed that many of the persons who had improperly obtained membership books were, in all probability, sufficiently skilled to qualify for journeyman membership in the United Association. In view of this finding, the U.S. decided to give all of those persons, including the plaintiff, who had improperly obtained their membership books, an opportunity to fulfill the U.A. requirements for membership by appearing before a Special Examining Committee, completing a new application for membership, and taking the required oath of obligation. This decision was made in view of the fact that the U.A. wanted qualified members, but this action in no way waived the U.A.'s right to cancel fraudulently obtained memberships if it chose to do so.

20. With the exception of the plaintiff, all of those found qualified were, after completing their examination and after taking the required oath of obligation, continued as members of the U.A. and of the local to which they were attached and their membership was made retroactive to the date of their original membership book. None of these people had been expelled as no issue had been made of their status as members. Consequently they did not have to pay a new initiation fee because the one they had previously paid had not been returned to them.

21. The plaintiff was in a different situation. His right to membership had been formally challenged by Local # 198. There being no doubt, and in fact no denial of the fact that he had fraudulently obtained his membership book, the U.A., in answer to the challenge, actually expelled the plaintiff and refunded the initiation fee which he had paid to the Provo local. Plaintiff then filed suit contesting the right of the U.A. to expel him. This was before the U.A. had actual knowledge of the identity of others who might be subject to expulsion, and before it had knowledge

of the extent to which illegal memberships had been obtained.

22. When plaintiff was examined by the Special Examining Committee he was found to have the skill required for membership. But because of the fact that his membership had been challenged, and he had actually been expelled from membership by the U.A., and because his initiation fee had been refunded to him and litigation was pending concerning the right of the U.A. to cancel a fraudulently obtained membership, it was necessary that the plaintiff be treated somewhat differently from others whose memberships had been continued. The U.A. therefore offered the plaintiff a new membership through Local # 198 upon payment of the required initiation fee and upon taking the required oath of obligation. Plaintiff refused this offer and proceeded with this suit.

23. Plaintiff testified that he does not now want membership in Local # 198. But the whole purpose of his securing Provo membership was to enable him to transfer and obtain full membership in Local # 198. In fact, that is what he did and that is what caused his membership to be challenged. He had been accepted, under protest, to membership in Local # 198. The challenge of Local # 198 revealed the undisputed fact that the plaintiff had knowingly, intentionally, fraudulently obtained his membership in Provo Local # 466, and that he thus had really not acquired any right of transfer.

24. Plaintiff contends that despite these undisputed facts, he is entitled to have his membership reinstated as if he had never been expelled, and that he is entitled to recover damages that have accrued since the date of his expulsion. It is his contention that his expulsion was in violation of the provisions of Title 29, United States Code, Section 411(a)(5) which provides that no member of a labor organization may be suspended or expelled unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing. He contends that he was a member of the union entitled to this protection, and that his summary expulsion violated that provision of law.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter pursuant to the provisions of Title 29, United States Code, Section 412.

2. The legal issues involved in this suit are (1) whether or not, as a matter of law, the plaintiff is a "member" of a labor organization as contemplated by the "Bill of Rights of Members of Labor Organizations," Title 29, United States Code, Section 411, and (2) whether or not the plaintiff is entitled, as a matter of law, to the protections accorded members of labor organizations provided for by that statute.

3. The Bill of Rights of Members of Labor Organizations provides, in pertinent part, that:

"No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

"(b) Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect." 29 U.S.C. § 411(a)(5) and (b).

4. Under Title 29, United States Code, Section 402, "Member" is defined as follows:

"(o) 'Member' or 'member in good standing', when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization."

5. With regard to forfeiture of membership, Section 170 of the Constitution of the United Association provides:

"Section 170. Anyone who shall certify to any false statement or fact, or false answer on any of the official forms of application for membership, or file false and fraudulent affidavits, or otherwise by any false pretense, misrepresentation or fraud, attempt to secure, or does secure, acceptance as a member of the United Association or any chartered or affiliated Local Union shall immediately forfeit all further right to consideration as an applicant, and shall immediately forfeit membership by immediate cancellation if membership has already been acquired or established in the manner specified herein, upon evidence of such false pretense, misrepresentation or fraud being presented to the General Officers."

6. The Labor-Management Reporting and Disclosure Act, and the Bill of Rights contained therein applies only to "members" or "members in good standing" as defined by the LMRDA. The Act does not set up its own requirements for membership. Instead, it recognizes the right of unions to choose their own members. See *Axelrod v. Stoltz*, 264 F.Supp. 536 (E.D.Pa.1967). *Moynahan v. Pari-Mutuel Employees Guild of Cal. Local 280*, 317 F.2d 209 (CA 9 1963) cert. den. 375 U.S. 911, 84 S.Ct. 207, 11 L.Ed.2d 150 (1963).

■ 7. In order to fall within the definition of "member" or "member in good standing" contained in the Act, it is necessary that the alleged "member" has "fulfilled the requirements for membership" in the union, and that he has not been expelled from membership pursuant to a lawful provision of the constitution of the union. In the instant case, in order to become a "member" of Provo Local # 466, and thus a member of the United Association, an applicant must pass a satisfactory examination; be examined by a local investigating committee; submit affidavits vouching for his ability to perform the work of his trade; live within the geographic jurisdiction of the local, and take a prescribed oath of obligation. Plaintiff admittedly met none of these requirements for membership in Provo Local # 466 or in the U.A. The LMRDA in no way prohibits the union from establishing and enforcing these criteria for membership.

■ 8. Thus, the plaintiff has admittedly failed to meet the requirements for membership in either the Provo local or the United Association, and is therefore, as a matter of law, not entitled to the protections of the Bill of Rights of Members of Labor Organizations as set forth in Title 29, United States Code, Section 411(a)(5).

9. The provisions of Section 170 of the Constitution of the United Association, set forth hereinabove, are not inconsistent with the provisions of the LMRDA pertaining to the Union Member's Bill of Rights. The LMRDA protects the rights of persons who have been admitted to membership in a union or who have fulfilled the union's requirements for membership even though they have not been formally admitted. Section 170 of the U. A. Constitution, on the other hand, deals only with persons who have, because of fraud, false pretense or misrepresentation, failed to fulfill the requirements of membership. Persons such as the plaintiff, who undisputedly fall within this category, are obviously not embraced within the LMRDA definition of "member" but are squarely embraced within the provisions of Section 170 of the United Association Constitution.

■ 10. The plaintiff's only factual claim to membership resulted entirely from the fraud he admittedly perpetrated on the United Association. He seeks both injunctive and legal relief based entirely upon this admitted fraud. As early as 1848, in *Bein, et al. v. Heath*, 47 U.S. 228, 6 How. 228, 12 L.Ed. 416 (1848), the Courts recognized that:

"The equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained

an advantage. To aid a party in such a case would make this court the abetter of inequity." (At p. 246, 12 L.Ed. at p. 243)

There is no jurisprudence known to this Court which would alter this basic legal principle. And if, as this Court now finds, that because of his fraudulent action the plaintiff is not entitled to the equitable relief which he seeks, i. e., reinstatement as a member of the union, a fortiori, he is not entitled, under the circumstances of this case, to the damages which he seeks because his right to damages, if any accrued, would necessarily have to be predicated upon a finding that his union membership had been unlawfully terminated.

11. The Union Member's Bill of Rights, 29 U.S.C. § 411(a)(5), prohibits the fining, suspending, expelling, or otherwise disciplining of a member of the union without according the member certain due process rights such as specification of charges, time to prepare defense, and full and fair hearing. This Act contemplates disciplinary action against a member, that is, against a person who had fulfilled all of the requirements for membership, and had therefore been accepted as a member, or a person who had fulfilled all of the requirements for membership but for some reason or other had not been formally admitted as a member. In the present case, plaintiff admittedly had fulfilled none of the requirements for membership, and therefore he could obviously not be considered as a "member" within the meaning of the Act. Furthermore, the action taken against the plaintiff by the United Association in this case was not the disciplinary action contemplated by the Act. The action taken by the United Association in this case was simply recognizing the fact, attested to by the plaintiff's own admissions, that he had never fulfilled the basic requirements of membership in the union and that therefore he had never acquired the status of a member. The United Association's action in this case did not result in the expulsion of plaintiff from membership nor a termination of his membership. It simply took cognizance of the fact that the plaintiff had never been a member of the Provo local or the United Association, and it nullified plaintiff's claim to membership ab initio. This the United Association had a lawful right to do under the provisions of Section 170 of its Constitution. The action taken by the United Association in this case simply was not disciplinary action proscribed by the Act.

12. The Court therefore concludes that, as a matter of law, the plaintiff in this case had never become a "member", or a "member in good standing" of either Provo Local # 466 or the United Association, and was therefore not entitled to the protections of the Bill of Rights of Members of Labor Organizations as contained in Title 29, United States Code, Section 411(a)(5). Judgment will be entered accordingly in favor of all defendants, dismissing this suit in its entirety at plaintiff's cost.