Anthony E. BASILICATO, Anthony N. Basilicato, Anne L. Schaedler, Alphonse Basilicato, Vincent Basilicato, David Berti, Bruce W. Bowden, Alice Cave, Bernie Daigle, George Dometios, Philip Esteban, Benjamin Estra and Gerald Lombardi

v.

INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING MOTION PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA; and Thomas Kinsella, Gerald P. O'Sullivan, William M. Welch, Jr., Arnold Gorlick, and Bertram L. Martus.

Civ. No. N–79–117.

United States District Court, D. Connecticut.

Oct. 1, 1979.

Richard P. Altschuler, West Haven, Conn., for plaintiffs.

Catherine G. Roraback, Canaan, Conn., Donald J. Siegel, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**ELLEN B. BURNS, District Judge.**

■ Plaintiffs have brought this action alleging certain violations of their membership rights under the Labor-Management Reporting and Disclosure Procedure Act (hereinafter LMRDA), 29 U.S.C. §§ 401–531, most specifically 29 U.S.C. § 411,[1] by the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada (hereinafter IATSE or IA) and by various pro-tem officers of Local No. 273, Motion Picture Projectionists Protective Union of New Haven, Connecticut (hereinafter Affiliated Local No. 273). Plaintiffs have moved for a preliminary injunction which will issue "only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sonesta Int'l Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in original). Since the court, following a three-day hearing, finds no probability of success on the merits or sufficiently serious questions going to the merits because plaintiffs are no longer "members" of IATSE within the definition of 29 U.S.C. § 402(*o*),[2] the motion is denied.

[1]. 29 U.S.C. § 411(a)(1), (2), (4) and (5) provide in full:

(a)(1) *Equal rights*—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) *Freedom of speech and assembly*—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

.    .    .    .    .

(4) *Protection of the right to sue*—No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further*, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

(5) *Safeguards against improper disciplinary action*—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

Jurisdiction is based upon 29 U.S.C. § 412.

LMRDA is composed of six titles, which include Title I, 29 U.S.C. §§ 411–15, governing the rights of union members, and Title IV, 29 U.S.C. §§ 481–83, governing the election of officers. *See Schonfeld v. Penza,* 477 F.2d 899, 902–04 (2d Cir. 1973).

[2]. Defendants raised three additional arguments in their memoranda in opposition to the preliminary injunction. First, they claim that the court lacks jurisdiction over the individual defendants because they are not agents or representatives of IATSE, the defendant labor organ-

## I. THE DEFINITION OF "MEMBER-SHIP" UNDER FEDERAL LAW AND UNION REGULATIONS

■ The definitional provision of LMRDA, sets forth the meaning of "member" as follows:

"Member" or "member in good standing", when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization.

29 U.S.C. § 402(*o*). The equal rights guaranteed by LMRDA, including the right to vote in union elections and referenda (§ 411(a)(1)), to assemble and speak freely (§ 411(a)(2)), to bring suit against the union (§ 411(a)(4)), to be afforded significant procedural due process rights prior to disciplinary action (§ 411(a)(5)), and to run for an elective position (§ 481), accrue only to "members" or "members in good standing" of unions. LMRDA does not prescribe requirements for membership but instead recognizes the right of unions to choose their own members. *Hughes v. Local 11, International Association of Bridge, Structural & Ornamental Ironworkers*, 287 F.2d 810, 817 (3d Cir.), *cert. denied*, 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961); *Vincent v. Plumbers & Steamfitters, Local 198*, 409 F.Supp. 206, 211 (M.D.La.1976); *Axelrod v. Stoltz*, 264 F.Supp. 536, 539 (E.D.Pa.1967), *aff'd*, 391 F.2d 549 (3d Cir. 1968). *Cf.* 29 U.S.C. § 158(b)(1)(A) (labor organization has right to prescribe its own rules with respect to the acquisition or retention of membership therein). However, any provision of the constitution or bylaws of any organization which is inconsistent with LMRDA is "of no force or effect." 29 U.S.C. § 411(b).

The constitutions of IATSE and Affiliated Local No. 273 speak at great length concerning union membership. The first paragraph of Article I, § 3, of the IATSE Constitution (hereinafter IATSE Const.) defines the union's "membership" as follows:

The membership of this Alliance shall comprise the members in good standing of such local unions as shall hold a charter from this Alliance, and said affiliated local unions and such persons who, having been members of any local union which has had its charter revoked or suspended, shall retain their membership in this Alliance in the manner provided in these laws, and such persons as may acquire and hold direct membership in this Alliance pursuant to these laws.

There are two methods by which a local's charter may be terminated. First, IATSE Const., art. XVIII, § 11, provides that an affiliated local union's charter is revoked automatically when the local's paying membership is less than seven, if the charter was granted on or before September 1, 1978, or is less than fifteen, if the charter was granted after that date (subsection a); a local's charter may be revoked at the discretion of the International President if the local is delinquent in its dues for more than three months (subsection b), has failed to hold regular meetings (subsection c), or has violated any provision in the Constitution or Bylaws (subsection c). Second, IATSE Const., art. XVIII, § 12, provides that the membership may surrender a local's charter, with the following restriction:

This Alliance shall not recognize the right of any affiliated Local Union to surrender a charter granted to it by the Alliance, so long as there are at least seven members of the Local Union in good standing upon whom full per capita

---

ization, but are officers of Affiliated Local No. 273, which is not a defendant in this law suit. Second, they argue that the court has no subject matter jurisdiction to consider plaintiffs' claims to be officers, under Title I, 29 U.S.C. §§ 411–12, but rather that area is governed by Title IV. Third, Title IV cases challenging dis-

puted elections rest in the exclusive jurisdiction of the Secretary of Labor, pursuant to 29 U.S.C. § 482. The court need not consider these matters in light of its finding that the plaintiffs were not members of IATSE, within the meaning of 29 U.S.C. § 402(*o*).

tax is paid, desirous of retaining the charter unless the charter was issued after September 1, 1978, in which case there must be at least fifteen such members. Article IX, § 1, of Local No. 273's Constitution, entitled "Permanence of the Local", concurs: "This body: namely, Local No. 273, shall not have the power to dissolve itself if there are seven dissenting members."

If a local union's charter is revoked or surrendered, local members may apply to become "Members at Large" in IATSE:

> This dissolution of a local union shall not . . . in itself, deprive the individual members of the local union of their membership in this Alliance. They shall, instead, occupy the position of members-at-large, obligated to observe the laws of this Alliance governing individual members.

. . . . .

> Within ninety (90) days after the surrender or withdrawal of the charter of any dissolved local union the members thereof may apply to the General Secretary-Treasurer for permission to retain their membership in the Alliance. Such permission shall be granted only if the member so applying has complied fully with the foregoing provisions of this Section and has transmitted to the General Secretary-Treasurer payment of the total amount of his indebtedness to the dissolved local union in the time of its dissolution and payment in full of dues to the International Alliance. . . . The General Secretary-Treasurer shall issue to such applicant a card attesting that the applicant is a member-at-large in the Alliance. Such members-at-large shall be directly responsible to the General Office and shall enjoy all the privileges and perform all the duties of members in this Alliance. . . . On obtaining admission to another affiliated local union they shall surrender their cards of membership-at-large and shall thereafter be members of the local union to which they have been admitted.

> Such members-at-large shall be confined to working in the community where the dissolved local union to which they formerly belonged was located unless they first obtain permission from the General Office to work under the jurisdiction of another local union.

> Members of a dissolved local union who fail to apply for cards of membership-at-large within ninety (90) days after the dissolution of the local union shall cease to be members of this Alliance.

> Upon the formation of a new local union enjoying the charter privileges relinquished by a dissolved local union, members of the dissolved union who have retained membership-at-large in the Alliance, as above provided, shall automatically become members of the new local union, without the payment of any initiation fee.

IATSE Const., art. XIX, § 24.

Provision also is made for a union member to withdraw from membership. IATSE Const., art. XXI, § 14, provides in full: "Any member in good standing may voluntarily withdraw from the Alliance in the manner provided in Section 18 of Article Nineteen of this Constitution." IATSE Const., art. XIX, § 18, in turn provides:

> Affiliated local unions shall be obliged upon request to issue to any paid-up member in good standing, who is not under charges of misconduct, an honorable withdrawal card. Any local union refusing to issue such withdrawal card upon request shall be subject to the penalty of charter revocation. Affiliated local unions shall refuse to reinstate or readmit to membership in the Alliance any holder of an honorable withdrawal card who has committed acts detrimental to this Alliance after the date of issue of the withdrawal card.

> No holder of an honorable withdrawal card shall be reinstated or readmitted to membership by a local union unless and until the local union shall have first submitted the name of the former member to the General Secretary-Treasurer for

the investigation and approval of the General Office.

IATSE Const., art. XIX, § 18.

Having summarized the federal and union definitions of "membership," the court now may apply these standards to the facts in the instant case.

## II. *THE EXISTENCE OF TWO LOCAL UNIONS*

Plaintiffs Schaedler, Berti, Bowden, Cave, Daigle, Dometios, Esteban, Estra, Lombardi, Anthony E. Basilicato, Anthony N. Basilicato, Alphonse Basilicato, and Vincent Basilicato were members of Affiliated Local No. 273, which was chartered on January 1, 1913. IATSE Const. & Bylaws 126 (54th ed. 1978). Several plaintiffs were also officers of Affiliated Local No. 273, having been elected on November 18, 1978, including Anthony N. Basilicato as President, Schaedler as Secretary, and Anthony E. Basilicato as Business Representative.

On December 8, 1978, Schaedler sent a letter to the members of the affiliated local on the local's stationery, the heading of which reads "Service Organization, Local No. 273, International Alliance of Theatrical Stage Employees And Moving Picture Machine Operators of the U.S. and Canada, A.F.L.–C.I.O." Underneath this heading is the union's five-sided emblem which contains the number 273 surrounded by the letters IATSE. The text of the letter was as follows:

> The executive Board, in session on Friday, December 8, 1978, unanimously agreed to recommend disaffiliation with the I.A.T.S.E. and modify the organization structure to conform to an independent union.
>
> Reasons:
>
> 1. The I.A. has not provided representation, which constitutes taxation without representation.
>
> 2. The I.A. continues to refuse to relinquish the duly authorized Defense Fund monies for which each member is taxed quarterly.
>
> 3. The I.A. has imposed unfair and unjust detriment upon the officers and members of Local # 273.

> 4. The I.A. has attempted to bankrupt this Local illegally in an attempt to seize administrative control.
>
> These are but a few of the many, many reasons we are asking for a decisive vote of confidence at the Sunday, December 17, 1978 meeting.
>
> Balloting will be held in the proper order of business under "New Business". We urge every member to attend.
>
> A Couple of the Benefits will be absolute autonomous rule with an approximate $10.00 per quarter savings in quarterly dues.
>
> Sanctioned by a unanimous decision of the Executive Board.

Defendants' Exh. D.

At 9:00 a.m., Sunday, December 17, 1978, the local's Executive Board held its regularly scheduled monthly meeting. Of the eight persons in attendance, seven are plaintiffs in the instant case—Anthony N. Basilicato, Sr., Anthony E. Basilicato, Schaedler, Esteban, Berti, Dometios, and Lombardi. The meeting was adjourned by 9:30 a.m., and soon thereafter a "Regular Meeting" began. Twenty-three persons were present. Anthony N. Basilicato, the president, turned the chair over to Anthony E. Basilicato, the Business Representative. In the two pages of minutes, five paragraphs were devoted to the disaffiliation vote:

> Chair explained disaffiliation—reasons, advantages, and possibilities if were independent.
>
> Motion made by Gerald Lombardi to hold up discussion of future possibilities. Carried unanimously. Discussion followed.
>
> Motion made that there be no secret ballot on the disaffiliation question by Dave Berti, seconded by Gerald Lombardi. Carried 14 in favor—0 opposed.
>
> Motion made to disaffiliate from the International Alliance and become an independent Union by Gerald Lombardi, seconded by Philip Esteban.
>
> Open for discussion.

Results of vote: 17 in favor, 2 opposed, 1 abstaining.

Chair asked that it be recorded that Bert Martus and Thomas Kinsella had protested because they couldn't vote, but he also protested because Robert's Rules of Order says that the Chair cannot (sic) vote either.

Plaintiffs' Exh. 20.

On December 18, 1978, Anthony E. Basilicato sent a letter to Walter F. Diehl, International President of IATSE. The letterhead of the stationery read: "Service Organization, Local No. 273, Motion Picture Projectionists Protection Union of Connecticut, Independent." The IATSE emblem was no longer present. The bottom left of the letterhead included the names of the local's officers, which had not been on the prior stationery. These officers included Anthony N. Basilicato as president, Anthony E. Basilicato as business representative, and Schaedler as secretary. The text of the letter was as follows:

This is to inform you that Local # 273 is no longer affiliated with the I.A.T.S.E. and now stands as an independent union. This was decided at a meeting on Sunday, December 17, 1978. The polarity of vote was 17 in favor, two opposed, and one abstaining.

I feel it necessary to inform you that Local # 273 (Independent) will not tolerate any interference from yourself or members of your organization.

We, however, believing intelligence should prevail, would like our representatives to meet with your representatives at a place mutually agreed upon to discuss a settlement before filing civil suite (sic) and criminal charges against yourself and the International Alliance.

I sincerely hope you will give this matter your immediate attention.

Carbon copies were sent to five elected officials and the United States Department of Labor. Plaintiffs' Exh. 2.

On December 19, 1978, Anthony E. Basilicato sent a letter to area exhibitors, also on the independent union's new stationery, which read in relevant part:

To better serve our Exhibitors, Local # 273 (hereafter referred to as LOCAL # 273 MOTION PICTURE PROJECTIONISTS PROTECTIVE UNION OF CONNECTICUT—INDEPENDENT) has found it necessary to disaffiliate with the International Alliance.

Local # 273 will now be servicing all of Connecticut instead of just the New Haven County Area. This means you may now deal with one organization, which will have a consistent price structure, instead of dealing with several different locals with all the shortcomings of inconsistencies.

.    .    .    .    .

We are looking forward to a continuing successful relationship and, with our new face lifting, we are certain we can provide you with even better, more consolidated, less expensive services.

If you have any questions or suggestions please feel free to contact me at any time.

Plaintiffs' Exh. 3.

Between December 22 and December 28, 1978, ten members of Affiliated Local No. 273 wrote to Diehl asking that the IATSE charter be retained by the affiliated local, and not be surrendered, Affidavit of Diehl, Exhs. C(1)–(10). Such letters were written pursuant to IATSE Const., art. XVIII, § 12.

On January 10, 1979, a letter was sent to a local exhibitor by Frank R. Kinsella, the pro-tem president of Affiliated Local No. 273. This letter was sent on the local's redesigned stationery, which bore the same letterhead and IATSE emblem as the previous stationery, but now listed defendants Kinsella as pro-tem president, O'Sullivan as pro-tem vice president, Welch as pro-tem business representative, Gorlick as pro-tem secretary, and Martus as pro-tem treasurer. This letter read in full:

This is to notify you that, notwithstanding any claims to the contrary made by a so-called "independent" group masquerading under the name of Local 273, the fact is that Local 273 of the IATSE, AFL–CIO still exists and functions as a

bona fide labor organization and, therefore, you are not legally permitted to deal with or recognize the so-called "independent" as the bargaining agent for any of the projectionists employed in your theatre.

The independent group, under the Basilicato leadership, is not a bona fide labor organization and it has been so held by Court in issuing an injunction against that group to restrain them from picketing.

Legal action will be taken against any employer failing to continue to recognize Local 273, IATSE, AFL–CIO as the exclusive bargaining agent for the operators employed by it within our jurisdiction. We sincerely hope that you will do nothing to comple [sic] us to resort to such legal action and that you will cooperate with us in every way to maintain peace and stability in the industry in this area.

Defendants' Exh. A, attachment A.

On Sunday, January 14, 1979, an advertisement appeared in the theater section of a local newspaper, from the officers of the Affiliated Local No. 273, with the IATSE emblem prominently displayed:

#### TO: THE MOVIE GOING PUBLIC AND THEATRE OWNERS

Local 273 of the IATSE, AFL–CIO is a bona fide labor organization, still in existence, chartered for over 50 years to represent projectionists as the exclusive bargaining agent in the greater New Haven area. Any persons dealing with the Independent Projectionists, Local 273 are doing so at their own risk. The independent is not authorized to speak for or bind IATSE Local 273. PLEASE DO NOT BE CONFUSED by any claims made by the independent using the name of Local 273.

Defendants' Exh. A, attachment B (emphasis in original).

On January 27, 1979, Anthony E. Basilicato wrote a letter on his personal stationery, to James J. Riley, General Secretary-Treasurer of IATSE, seeking a membership-at-large card under IATSE Const., art. XIX, § 24, with a check enclosed. Basilicato's letter was premised upon his contention that Local No. 273 was now a "defunct" local union, under IATSE Const., art. XIX, § 24. Plaintiffs' Exh. 4. A response was written by Riley on February 1, 1979, in which he returned Basilicato's check. This letter read in pertinent part:

I am in receipt of your letter of January 27, 1979 in which you enclose a check . . . tendered as Membership-At-Large dues. Under the International Constitution, Article Nineteen, Section 24, Membership-At-Large is available only when the local to which a member belongs becomes defunct. Our records show that you were a member of Local No. 273, New Haven, and that such Local No. 273 is still in existence. Therefore, you are not eligible for a Member-At-Large card. It is noted also that you resigned from the I.A.T.S.E. when you and some former members of Local No. 273 voted to disaffiliate and establish an independent organization. In the same connection, I point out that when you voted to disaffiliate, you retained with you the books, properties and monies of Local No. 273 improperly and without authority.

Plaintiffs' Exh. 5.

On February 23, 1979, President Pro-Tem Kinsella of the Affiliated Local No. 273 sent letters to members of the union on the redesigned letterhead. This lengthy letter stated in relevant part:

Local 273, is alive and well despite the attempt to "breakaway" Local 273 from the IATSE by a group led by the Basilicatos. This breakaway attempt is doomed to failure because it violated the IA Constitution and By-Laws and may have violated the law.

The IA has ruled that Local 273, IATSE remains a functioning duly constituted local union. The IA has recognized the officers listed in the left margin as the leadership of its Local 273. The IA *does not* and *will not* recognize the Basilicato breakaway attempt or the Basilicato group.

The IA, along with the officers and members of IATSE Local 273 urge you to retain your membership in the IA and its Local 273. The *only* way to do this is to tender your 1979 first quarter dues to Treasurer Pro-tem Martus. . . . He is the *only* individual authorized to accept your dues to the IA and its Local 273. The IA and its Local 273 have already welcomed back several individuals who were formerly affiliated with the Basilicato group. We know that we will be welcoming others back in the near future. Those who have already returned know that they suffered no recriminations or coercion. Those of you who return in the near future will discover the same thing: there will be no recriminations or coercion. Everyone in Local 273, IATSE is protected by the IA Constitution and By-Laws and by the Bill of Rights of Members of Labor Organizations as provided by the Labor-Management Reporting and Disclosure Act, and by the National Labor Relations Act (all of which were specifically designed to protect the rights of the worker.). Everyone in Local 273, IATSE will get their fair share of available work and will enjoy the wages and working conditions negotiated by an AFL–CIO affiliated union.

In making your decision on whether or not to return, talk to us. Discuss the choice with other individuals who have already returned. Consider the following:

1—As a member of IATSE and its Local 273 you will enjoy all the protections and guarantees of the IA Constitution. What protections and guarantees do members of the Basilicato group enjoy?

2—As a member of IATSE or an IATSE Local 273 bargaining unit you may be eligible to participate in the IATSE National Pension Fund. Only employers under contract with IATSE or one of its locals are eligible to contribute to the IATSE Pension Fund. The Basilicato group is not an affiliated IATSE local and will not be able to negotiate contributions for you to the IATSE National Pension Fund.

We have the complete support of the IATSE and of its International officers. The IATSE State Association has helped us already and we know that it will continue to assist us.

. . . While the Basilicato group has filed a lawsuit seeking injunctive relief against the IA and Local 273, no injunctive relief has been granted. The Basilicato group has yet to have a success in any legal action it has initiated against the IA or its Local 273. We do not believe they will ever be successful in any legal action they file against either the IA or Local 273.

We are saddened by the continuing atmosphere of intrigue which further emphasizes that you are facing one of the most critical decisions of your working lives. If you choose to return to IATSE Local 273, you will join other fair-minded craftspeople who will observe the IA Constitution and respect your rights under that Constitution and under law. You will enjoy the benefits of belonging to and being protected by an AFL–CIO union that covers many facets of the entertainment industry in the United States and Canada. You will be one of thousands instead of one of a few.

Think about it. Welcome back!

Plaintiffs' Exh. 22 (emphasis in original).

Anthony E. Basilicato sent the following letter to the members of Local No. 273 and to area exhibitors on March 9, 1979, this time upon the original stationery of the local, which contained the IATSE emblem. This letter attempted to negate the effectiveness of the December 17, 1978, vote:

Kindly be advised! Recently, we became knowledgeable of the fact that due to an administrative error on the part of the International Alliance, notification not having been given to the officers of this organization, that the Surrender of the Charter by Local # 273, the process of disaffiliating from the I.A.T.S.E. & M.P.M.O. of the U.S. & C., had not been consummated.

Therefore, please stand notified, to disregard any and all previous correspon-

dence from this organization, indicating a change of status.

The organization previously referred to as the Motion Picture Projectionist Protective Union of Ct., Local # 273, is the official Local # 273 of the I.A.T.S.E. & M.P.M.O. of the U.S. & C., and should be referred in all future correspondence and transactions as such.

The elected officers have authorized the filing of a complaint with the Secretary of Labor under Title IV, "Enforcement" in compliance with Section 402 of the Labor Management Reporting and Disclosure Act of 1959, as amended, for violations of section 401. The complaint has been filed and the matter is before the Secretary of Labor.

In the interim period, we are asking your compliance of Section 402(a)(2), in particular: "The challenged election shall be presumed valid pending a final decision thereon (as herein provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such manner as its constitution and bylaws may provide."

Local # 273 of the I.A.T.S.E. & M.P.M.O. of the U.S. & C. held an election of officers in November of 1978. The following is a list of the officers elected at that time:

President—Anthony N. Basilicato, Sr.
Vice-President—Andrew Carrano
Business Representative—Anthony E. Basilicato
Secretary—Anne L. Schaedler

. . . . .

As is specified in Section 402(a)(2) the affairs of Local # 273 of the I.A.T.S.E. & M.P.M.O. of the U.S. & C., shall be conducted by the officers elected, not the pro-tem officers, pending a final decision of the Secretary of Labor.

Therefore, in accordance with Section 402(a)(2), kindly comply and direct all your subordinates to conduct all business affairs and other transactions concerning Local # 273 of the I.A.T.S.E. & M.P.M.O. of the U.S. & C., with and to my attention in accordance with the Labor-Man-

agement Reporting and Disclosure Act of 1959, as amended.

We sincerely apologize for the error of our International and hope this situation has not caused you too much inconvenience.

Plaintiffs' Exhs. 10 & 11.

A counter letter, written by Riley on March 15, 1979, on the redesigned stationery, was distributed to local union members and local exhibitors:
·

After disaffiliating from Local No. 273, IATSE and setting up an independent union, and faced with a total failure to accomplish anything in the broadside of charges and complaints he filed against everyone, Anthony Basilicato, in an obvious state of despair, is now trying to reverse his course of action.

In a letter dated March 9, 1979, on the stationary [sic] of Local No. 273, IATSE—without its authorization—he boldly announces that the disaffiliation from the IATSE has not been consumated [sic] and that he and the others whom he dragged along with him are now still members of Local No. 273, IATSE. This is unadulterated nonsense!

So far as the International is concerned Anthony Basilicato and those who disaffiliated from Local No. 273, IATSE and established the independent organization are no longer members of the IATSE. Their use of the IATSE emblem and of the stationary [sic] of Local No. 273, IATSE is absolutely unauthorized and improper. Neither Basilicato nor any of the others whom he mentions in his letter are members or officers of Local No. 273, IATSE. They do not speak for Local No. 273, IATSE. The persons recognized by the International as the legitimate officers of Local No. 273, IATSE are the following: Thomas Kinsella, President; Bertram Martus, Treasurer; William Welch, Business Agent; Arnold Gorlick, Secretary. We are asking you, therefore, to pay no heed at all to Basilicato's letter of March 9, 1979. It is a misrepresentation of the facts and utterly worthless. In due course, appropriate action will be taken against Basilicato to enjoin him from representing himself as a member

and officer of Local No. 273, IATSE and from his improper and unauthorized use of the IATSE emblem and Local No. 273, IATSE stationary [sic].

If you desire any further information regarding this matter, please communicate with this office and we will be pleased to furnish you with more details.

Plaintiffs' Exh. 12.

Plaintiffs now protest, in response to Riley's letter of March 15, 1979, that they were deprived of their membership and officer status in Local No. 273 without written notice and a full and fair hearing, all in violation of 29 U.S.C. § 411(a)(5). Plaintiffs further allege that they have been denied various rights and privileges guaranteed by 29 U.S.C. §§ 411(a)(1) and (2), and 415. Jurisdiction is based upon 29 U.S.C. § 412, which provides that any "person" whose LMRDA rights have been infringed may commence suit in a federal district court.[3]

### III. PLAINTIFFS HAVE "VOLUNTARILY WITHDRAWN" FROM AFFILIATED LOCAL NO. 273

As previously stated in Part I *supra,* the rights accorded to persons under 29 U.S.C. § 411 apply only to "members" of labor organizations. The definition of "member" within 29 U.S.C. § 402(o) is not limited to those persons who are recognized as members by the organization. Instead, it provides equal rights and privileges to any person who has fulfilled the requirements of membership, i. e., those who are members in substance despite the fact that the union officials have not performed the ministerial acts necessary to give formal recognition to a person's status as a member. *Hughes v. Local 11, International Association of Bridge, Structural & Ornamental Ironworkers, supra,* 287 F.2d at 814–15, 817–18; *Vincent v. Plumbers & Steamfitters, Local 198,* 384 F.Supp. 1379, 1382 (M.D. La.1974); *Axelrod v. Stoltz, supra,* 264 F.Supp. at 539. However, most cases construing 29 U.S.C. § 402(o) have arisen in different contexts, namely the expulsion or suspension of a union member, e. g., *Brennan v. Independent Lift Truck Builders Union,* 490 F.2d 213 (7th Cir. 1974); *Axelrod v. Stoltz, supra*; the transfer of a member from one local union to another local, e. g., *Gavin v. Structural Iron Workers, Local 1,*

---

3. The court has reservations whether plaintiffs have exhausted their union remedies for four months, pursuant to 29 U.S.C. § 411(a)(4). Internal appeals within IATSE are governed by IATSE Const., art. XVII.

The only evidence presented with respect to exhaustion pertained to Anthony E. Basilicato's attempts to press impeachment charges against Diehl. Basilicato sent a letter to the General Executive Board on February 5, 1979, in which he preferred such impeachment charges. Plaintiffs' Exh. 6. James J. Riley, General Secretary-Treasurer of IATSE, wrote a letter, dated February 13, 1979, in which he stated that Basilicato's impeachment charges would be presented to the General Executive Board, which might decline Basilicato's appearance before it should the board decide Basilicato was no longer a member of IATSE. Plaintiffs' Exh. 7. Riley wrote a letter on March 5, 1979 to Basilicato stating that the General Executive Board had determined that his charges were not "cognizable" because Basilicato was not an IATSE member. Plaintiffs' Exh. 9. On March 6, 1979, Basilicato sent a mailgram to Riley asking that the Board refer his appeal to the Alliance in Convention in Tulsa, Oklahoma. Plaintiffs' Exh. 14. That same day Riley sent Basilicato a mailgram acknowledging receipt of the earlier mailgram but refusing to provide any further opportunity for hearings within the union. Plaintiffs' Exh. 15. Because the Alliance is not due to reconvene until August 1980, the four-month exhaustion requirement of 29 U.S.C. § 411(a)(4) has been satisfied with respect to the impeachment charges. However, there appeared to have been no appeal of Riley's letter of February 1, 1979 (Plaintiffs' Exh. 5). Because plaintiffs later claimed their union was still affiliated with IATSE, the preferable route might have been IATSE Const., art. XIX, § 21, governing disputes between local unions:

If any affiliated local union shall have a grievance against another affiliated local union, or if there shall be a disagreement between local unions respecting their respective jurisdictions, membership or policies, such grievances or disputes shall be referred by the local unions to the International President for his decision and his decision shall be binding upon the local unions involved.

However, because Basilicato's impeachment charges related somewhat to the facts in the instant case, and because defendants did not raise this exhaustion issue, the court will accept jurisdiction *arguendo,* especially in light of its findings under Part III *infra.*

553 F.2d 28 (7th Cir. 1977); *Hughes v. Local 11, International Association of Bridge, Structural & Ornamental Ironworkers, supra; Woods v. Local 613, International Brotherhood of Electrical Workers*, 404 F.Supp. 110 (N.D.Ga.1975); and the initial denial of membership into a union, *e. g., Vincent v. Plumbers & Steamfitters, Local 198*, 384 F.Supp. 1379 (M.D.La.1974) & 409 F.Supp. 206 (M.D.La.1976). Relatively few cases have concerned the voluntary withdrawal of membership from a union.

■ A union member has a right to resign from a union, although the union constitution and bylaws may impose reasonable sanctions and limitations on this right. *N.L.R.B. v. Granite State Joint Board, Local 1029*, 409 U.S. 213, 216, 93 S.Ct. 385, 34 L.Ed.2d 422 (1972); *N.L.R.B. v. Martin A. Gleason, Jr.*, 534 F.2d 466, 476 (2d Cir. 1976); *Communications Workers v. N.L.R.B.*, 215 F.2d 835, 838 (2d Cir. 1954). Before finding that a person has "voluntarily withdrawn" from union membership, the court must be satisfied that a person has acted "voluntarily" and has in fact resigned his or her union membership. For example, on two occasions, the Second Circuit has determined that an employer's promise of a new job should an employee resign from a union during a strike or lockout refutes a "voluntary" withdrawal by a union member. *N.L.R.B. v. Martin A. Gleason, Inc., supra*, 534 F.2d at 476–77; *N.L.R.B. v. Local 50, American Bakery & Confectionery Workers Union*, 339 F.2d 324 (2d Cir. 1974). However, "voluntariness" of plaintiffs' action is not an issue in this case; rather, the issue is whether the actions they voluntarily took constituted withdrawal or resignation of membership.

■ Resignations generally are construed narrowly in union cases. *Cf. N.L.R.B. v. Mechanical & Allied Production Workers Union, Local 444*, 427 F.2d 883 (1st Cir. 1970) ("resignation from trade" is not the equivalent of resignation from union); *N.L.R.B. v. Local 50, American Bakery & Confectionery Workers Union, supra*. Such a narrow construction was applied in *Bradley v. Local 119, International Union of Electrical Radio and Machine Workers*, 236 F.Supp. 724 (E.D.Pa.1964). Plaintiffs had been union members in good standing who had authorized their employer, General Electric (hereinafter G.E.) to automatically deduct their union dues from their paychecks and to forward this amount to the union. In September 1964, plaintiffs revoked this "check off" authorization and thereafter tendered payment of their dues at the defendant union's office. This "over the counter" tender was rejected by union officials. Plaintiffs were denied admittance at union meetings, as the union believed that the plaintiffs' revocation of the "check-off" authorization constituted their resignation from union membership. The district court rejected the defendant union's interpretation of plaintiffs' revocation and ordered the union to accept plaintiffs' tender of dues and to accord them the rights and privileges of membership. The court observed that there were no provisions in the local or international union's constitution, or in the contract between the union and G.E., which expressly stated that revocation of the "check off" authorization was resignation. Moreover, there was no evidence that it was a matter of general knowledge among members that such revocation constituted resignation. The court therefore relied upon a dictionary definition of "resign":

> Unless there is some special meaning to be accorded to it, the word "resign" is to be given its normal and customary meaning, "To give up deliberately: renounce by a considered or formal act * * *."

*Id.* at 728–29, citing Webster's New Int'l Dictionary (3d ed. 1961). The court also contrasted the plaintiffs' behavior with that of 137 other union members who, along with their "check off" revocation, had submitted letters with specific language of resignation or withdrawal from membership in the local. These 137 members had "clearly and deliberately terminated their membership, i. e., they resigned in express terms." *Id.* at 729. Contrarily, the plaintiffs' "actions at all times evidenced an intention to remain members and to retain the rights of membership." *Id.*

The opposite result was obtained in *Schuchardt v. Millwrights & Machinery Erectors, Local 2834,* 380 F.2d 795 (10th Cir. 1967), where charges against plaintiff had been lodged in the fall of 1964. The union decided to expel him in January, 1965, and plaintiff appealed this decision through the union's internal administrative procedure. Plaintiff had paid his dues through January, 1965, but thereafter refused to do so. Plaintiff eventually was expelled for non-payment of dues. The defendant union argued that plaintiff's refusal to pay dues constituted a voluntary resignation and therefore his lawsuit on the original claim was moot. The court agreed:

> . . . the Union not only indicated a willingness to accept dues but actually encouraged (plaintiff) to pay dues in order to protect his own interests. (Plaintiff's) deliberate refusal to pay dues and his subsequent expulsion therefor, did, in effect, constitute a voluntary surrender of his union membership.

*Id.* at 797–98.

A somewhat analogous factual situation was presented in *Johnston v. Ebert,* 78 Civ. 4182 (S.D.N.Y. Nov. 20, 1978), reprinted in Lab.L.Rep. ¶ 10,961 (CCH). Plaintiff was a member of Teamsters' Local 445 and served as one of three trustees of the local. Five months prior to the expiration of plaintiff's term, plaintiff announced his resignation, "effective immediately," at a meeting of incumbent candidates. A successor trustee was named and plaintiff later claimed that he had not resigned and that his "removal" from his trusteeship was due to his support of a rival candidate, in violation of 29 U.S.C. § 411(a)(2). Plaintiff relied upon a provision of the Teamsters' Constitution that a resignation of membership must be in writing to the Secretary-Treasurer of a local union and becomes effective thirty days after its receipt. The court held this provision inapplicable as it applied only to resignation of membership and that its purpose was "to insure that resignation is not used to avoid financial obligations." Thus the court held that plaintiff's oral resignation from his trusteeship was valid and legally effective at the time it was made.

The court notes that the plaintiffs' "withdrawal" was not made in accordance with IATSE Const., art. XIX, § 18, and art. XXI, § 14. However, under the totality of the circumstances here present, the members and officers of IATSE and Affiliated Local No. 273 reasonably could assume that the plaintiffs had resigned their membership, in the absence of withdrawal cards. The court finds that Affiliated Local 273 is a viable local, and hence not defunct, as more than seven members indicated their desire to retain the local's charter, pursuant to IATSE Const. art. XVIII, § 12, and Local No. 273 Const. art. IX, § 1. The court must analyze plaintiffs' actions to see if such actions evidenced "an intention to remain members and to retain the rights of membership." *Bradley, supra,* at 729. Based upon the plaintiffs' behavior, especially as evidenced in their correspondence, the court finds that the plaintiffs evidenced no such intention and voluntarily withdrew from the affiliated local and formed their own independent local.[4]

The intent of the plaintiffs is evidenced in the language they used in their correspondence with local union members, IATSE officials, and local exhibitors. Especially telling are the letters of December 8, 1978 (Defendants' Exh. D), December 18, 1978 (Plaintiffs' Exh. 2), and December 19, 1978 (Plaintiffs' Exh. 3). The December 8th letter to local union members stated that the purpose of the December 17th meeting was to "modify the organization structure to conform to an independent union." Four reasons for disaffiliation from IATSE were listed: Anthony E. Basilicato's letter to Diehl, dated December 18, 1978, could not be clearer that the "Basilicato group" had formed an independent union "no longer affiliated with" IATSE. The

---

4. A subsidiary question could arise concerning the extent to which Anthony E. Basilicato's letters are binding upon the other plaintiffs. However, attorneys for both sides stipulated in open court on May 15, 1979, that all plaintiffs, who had voted for disaffiliation, would be treated equally.

letter of December 19, 1978 to area exhibitors referred to the new local as an "Independent," and stressed that the independent's jurisdiction was "all of Connecticut instead of just the New Haven County Area." The text of these letters indicates that the plaintiffs intended to sever their affiliation with IATSE and form their own independent union.

The local's stationery is also suggestive of the disaffiliation. The independent local's letterhead differed from the original stationery of Local No. 273 in at least three significant manners: (1) the affiliated local's letterhead identified itself as the "International Alliance of Theatrical Stage Employees . . . of the U.S. and Canada, A.F.L.–C.I.O.," whereas the independent's letterhead described itself as "Motion Picture Projectionists Protection Union of Connecticut, Independent"; (2) the affiliated local's stationery contained the IATSE emblem whereas the independent's did not; and (3) the independent's letterhead contained a roster of local officers whereas the original stationery of Local No. 273 did not. The fact that the letterheads were easily distinguishable in identifying the locals reflects plaintiffs' intent to establish their own separate and distinct labor organization.

This intent also is indicated by contrasting the Constitution and Bylaws of Local No. 273, adopted on July 8, 1954, with those of the independent local. Plaintiffs' Exhs. 17 & 18, respectively. The pamphlet containing the independent's regulations is easily discernible in that all references to IATSE, by word or emblem, have been deleted, by either black or white indelible markings. Other changes in the structure of management of the local are also present, e. g., Independent Local No. 273 Const. art. II, §§ 1 & 3; art. III, § 2; art. IV, §§ 1 & 4; art. V, § 8; art. VII, §§ 1 & 2; art. VIII, § 4; Bylaws §§ 1, 4, 7, 13(b), 13(c), 13(e), 13(f), 17, 19, 27(b), 29, 31, 34, & 35, including the deletion of all references to a seniority system. It is obvious to this court that serious policy issues were resolved before adopting this constitution and bylaws, further evidencing that plaintiffs'

actions constituted a deliberate withdrawal from IATSE.

The court need not ascertain the exact moment of disaffiliation—the vote of December 17, the letter to Diehl of December 18, or the letter to exhibitors of December 19—in light of the finding that the totality of the circumstances justified the defendants' conclusion that the plaintiffs had resigned voluntarily from IATSE. A judge must be reluctant to broaden the circumstances in which a union may determine that a member has resigned. The requisition of a withdrawal card under IATSE Const. art. XIX, § 18 & art. XXI, § 14 has distinct advantages in that it has an element of clear intent and finality, as well as avoiding questions concerning the date of effectiveness. These provisions also prevent a union from circumventing the due process requirements of 29 U.S.C. § 411(a)(5) in expelling a member by claiming that the union believed the member had resigned by his or her lack of interest or participation in union activities. However, the behavior and communications of the plaintiffs so clearly demonstrated their intent to disaffiliate from IATSE that the international and affiliated local reasonably could believe that plaintiffs had withdrawn from the union, even in the absence of requesting withdrawal cards.

Plaintiffs further allege that the defendants' actions violated their right to join rival unions. IATSE Bylaws, art. XV, expressly prohibits membership in rival unions:

Any member who joins, belongs to or becomes or remains a member of any other union or labor organization whose aims, purposes, activities or actions are in conflict or competition with or hostile to those of the Alliance or any of its affiliated local unions shall be deemed to be engaged in conduct detrimental to the advancement of the purposes which this Alliance pursues, and, upon being found guilty thereof after trial, shall be subject to expulsion. The International President, with the consent of the General Executive Board of the Alliance, is authorized and empowered, whenever the cir-

cumstances require it, to make appropriate findings as to, and to declare and publish the names of, any unions or labor organizations whose aims, purposes, activities or actions are deemed in conflict or competition with or hostile to those of the Alliance or any of its affiliated local unions, and any such findings and declaration shall be conclusive unless set aside and vacated by the delegates at the next succeeding Convention of the Alliance. It shall be the duty and obligation not only of the Alliance but also of each of its affiliated local unions to take all steps necessary to implement and enforce the provisions of this Article Fifteen.

However, there is considerable disagreement whether or not "dual unionism" is protected by LMRDA.

The plaintiffs in *Sawyers v. Grand Lodge, International Association of Machinists*, 279 F.Supp. 747 (E.D.Mo.1967), were former members and officers of Local Lodge 837, which had been placed in trusteeship by the international union. Two plaintiffs had been expelled from the union after having been found guilty of advocating "dual unionism." Plaintiffs argue that their expulsion violated their free speech rights under 29 U.S.C. § 411(a)(2). The court rejected this claim, relying upon the proviso in that section that a labor organization may

adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

The court thus ruled:

When local officers encourage local members to break away from the national organization and form an independent union, it clearly undermines the responsibility of local members to the national organization, and threatens the enforcement of contractual obligations. Therefore, the advocation of dual unionism is not protected . . . under LMRDA

. . . . .

*Id.* at 756.

This broad statement of the *Sawyer* ruling was rejected in *Airline Maintenance Lodge 702 v. Loudermilk*, 444 F.2d 719 (5th Cir. 1971), in favor of a balancing test of the respective interests of the union and its membership. Defendant Loudermilk, an employee of Eastern Airlines, had been a member of the plaintiff union by virtue of a union shop agreement between the union and the airline. Four years later, defendant joined and became president of a rival local union, Aircraft Mechanics Fraternal Association (AMFA). Three years thereafter, an election was held to choose a bargaining unit. Defendant campaigned on behalf of AMFRA, which lost the election by a narrow margin. Defendant subsequently was fined by the plaintiff union for "dual unionism" and defendant refused to pay the fine, stating that the fine violated his LMRDA rights of free speech. The district and circuit courts agreed with defendant, stressing that defendant had been compelled to join the plaintiff union under the union shop agreement.

However, the *Sawyer* rule was adopted recently in *Davis v. Ampthill Rayon Workers, Inc.*, 446 F.Supp. 681 (E.D.Va.1978), aff'd mem., 594 F.2d 856 (4th Cir. 1979). The defendant union was a local union representing workers at the DuPont Ampthill Rayon Plant. The United Steelworkers of America began negotiations with defendant to persuade defendant to affiliate with the steelworkers, but these negotiations terminated unsuccessfully. Some time thereafter, membership cards for the steelworkers union were circulated among the local members, indicating that the steelworkers were soliciting the rank and file members. Plaintiff, a member of the Board of Trustees of the defendant union, distributed some of these cards, as well as a handbill announcing a meeting sponsored by the steelworkers union. Plaintiff eventually was removed from his union position, pursuant to a union rule, and he claimed this had been done in violation of LMRDA. The court found that the defendant reasonably believed that the plaintiff actively was supporting a rival union in its attempts to supplant defendant. 446 F.Supp. at 684. Thus, the court held:

The Court is of the view that the union rule that a director may be removed for supporting a rival union falls within the proviso of § 411(a)(2). *Sawyers v. Grand Lodge International Association of Machinists*, 279 F.Supp. 747 (E.D.Mo.1967). The Court finds that the defendant was primarily concerned with enforcing its lawful rules when it removed plaintiff from office.

The rule under which plaintiff was removed from office is a rule established for the protection of the union. The fact that the removal of plaintiff was in part the result of his protected activities does not alter the fact that the interests of the union membership were benefited by defendant's removal of a director who had shown his disloyalty to the union. The activity of the defendant in vindicating its right to enforce its reasonable rules has benefitted the union members, while plaintiff has, by his litigation, done nothing of benefit to the union membership.

*Id.* at 686–87.

The court need not select between the *Sawyers/Davis* and *Loudermilk* analyses for it finds that plaintiffs were not expelled for having founded an independent union, but instead voluntarily resigned from IATSE. There is little doubt that if plaintiffs had been expelled for "dual unionism," such an expulsion was not done pursuant to IATSE Bylaws, art. XV, which requires a trial, and hence the expulsion would have been invalid. As emphasized before, the language of plaintiffs' letters of December 8, 18, and 19, 1978, do not support plaintiffs' contention that they merely formed a rival union to Affiliated Local No. 273, which local still would have ties to IATSE. These letters clearly demonstrate that plaintiffs simultaneously disaffiliated from IATSE, Local 273 and formed an *independent* union. Had plaintiffs chosen only to form and join a rival union, but remain associated with IATSE as well, they surely would have utilized far different language in their communications with IATSE and local exhibitors. The compounded element of disaffiliation and formation of a rival union, rather than "dual unionism," is the dispositive factor here.

## IV.  CONCLUSION

The court concludes that plaintiffs were no longer "members" of Affiliated Local No. 273 or IATSE, as defined by 29 U.S.C. § 402(*o*) and the relevant provisions of the IATSE Constitution, for they had "voluntarily withdrawn from membership" by December 19, 1978, even though they had not applied for withdrawal cards, and hence were not eligible for the protections provided by LMRDA. In the absence of probable cause of success on the merits, plaintiffs' motion for preliminary injunction is denied.

SO ORDERED.